| | |
|---|---|
| In re: | Case No. 26-50237 |
| SWIFTSHIPS, LLC,[1] | Chapter 11 |
| *Debtor-in-Possession*. | |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTOR TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

**NOW INTO COURT**, through undersigned counsel, comes Swiftships, LLC (the "Debtor"), who moves for the entry of an order authorizing the Debtor to: (a) pay pre-petition wages, salaries, other compensation, and reimbursable expenses and (b) continue employee benefits programs, and (ii) granting related relief. In support, the Debtor represents:

**I.**
**RELIEF REQUESTED**

1. The Debtor seeks entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing, but not directing, the Debtor to (i) pay pre-petition wages, salaries, other compensation, and reimbursable expenses and (ii) continue employee benefits programs in the ordinary course, including payment of certain related prepetition obligations; and (b) granting related relief.

---

[1] The last four digits of the Debtor's federal tax identification number are 8795. The Debtor's mailing address is 1105 Levee Road, Morgan City, LA 70380.

## II.
**JURISDICTION AND VENUE**

2.      The United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor confirms its consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.
## Background

5.      The Debtor is a U.S.-based shipbuilder and maritime engineering company with a history dating back more than 80 years, specializing in the design, construction, integration, testing, certification, delivery, and life cycle support of small- to medium-sized military and commercial vessels for clients around the world. The Debtor's offerings encompass end-to-end shipbuilding services—including naval architecture, engineering, fabrication, system and autonomous systems integration, and program management—along with follow-on technical support, maintenance, repair and overhaul, training, and sustainment services, and it has built and supported hundreds of proprietary vessel designs used by navies, defense agencies, and maritime operators globally.

2

6. On March 18, 2026 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since that time the Debtor has continued to operate and manage its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7. The Debtor's Chapter 11 filing was motivated primarily be its desire to preserve a significant amount of equity in one of its ships—the M/V Risen Sun (the "<u>Vessel</u>"). Prior to the Petition Date, several creditors, including K.A.D., L.L.C. and LeBlanc & Associates, L.L.C., asserted liens against the Vessel. A sheriff's sale for the Vessel was scheduled for March 25, 2026. *See LeBlanc & Associates, L.L.C. v. Swiftships, LLC*, No. 139765, Div. "G" (Parish of St. Mary, Louisiana). The Debtor believes the Vessel is worth at least $7.5 million while the alleged liens against it total not more than $3.5 million. Thus, the Chapter 11 filing was necessary to preserve at least some $4 million in equity for the benefit of all stakeholders.

### IV.
### THE DEBTOR'S WORKFORCE

8. As of the Petition Date, the Debtor employes a workforce of twenty-six (26) individuals (the "<u>Employees</u>") on a full-time basis. Ten (10) Employees are paid on an hourly basis, while sixteen (16) are on salary.

9. The Employees perform a wide variety of job functions that are critical to the Debtor's continued operations and efficient administration of this Chapter 11 case. The Employees consists of individuals that specialize in, among other things, production, IT, quality assurance, engineering, and maintenance, each of which are crucial to the Debtor's day-to-day operations.

10. Importantly, the Employees cannot be easily replaced, especially given the specialized and technical nature of the industries in which the Debtor operates and the corresponding sophistication of the Debtor's customers and partners. Put simply, without the skill

3

and expertise of the Employee's, the Debtor would not be able to operate its business. Moreover, the Employees rely on the compensation and benefits to pay daily living expenses, and absent the relief requested herein, the Debtor's ability to operate its business and administer its estate efficiently in the early days of this Chapter 11 case will be materially impaired to the detriment of all stakeholders. Accordingly, the relief requested herein is warranted under the circumstances and the Court should therefore grant the Order.

## V.
### COMPENSATION AND BENEFITS

11.    The Debtor seeks authority, but not direction, to: (a) pay and honor certain prepetition claims, if any, relating to, among other things, Wage Obligations, Payroll Processing Fees, Reimbursable Expenses, Payroll Taxes, Health Insurance and Pension Benefits, PTO and Paid Leave Benefits, and certain other compensation or benefits that the Debtor provides in the ordinary course (each as defined below, and collectively, the "Compensation and Benefits"); [2] and (b) pay all costs related to or on account of the Compensation and Benefits in the ordinary course of business of a post-petition basis.

12.    The Debtor seeks to continue its applicable pre-petition Compensation and Benefits in the ordinary course on a post-petition basis. Out of an abundance of caution, the Debtor further requests confirmation of its right to modify, change, or discontinue any of its Compensation and Benefits, and to implement new programs, policies, and benefits on a post-petition basis in the ordinary course of business, in the Debtor's sole discretion, and without the need for further Court

---

[2] The descriptions of the Compensation and Benefits set forth in this Motion constitute a summary only. The Debtor requests authority, but not direction, to honor obligations related to Compensation and Benefits in the ordinary course of business, regardless of whether the Debtor inadvertently failed to include a particular benefit or aspect of compensation in the defined term "Compensation and Benefits," and any such omitted benefit or aspect of compensation is hereby included in the defined term "Compensation and Benefits" as used herein and in the Order.

approval, subject to applicable law. For the avoidance of doubt, the Debtor does not seek relief through this Motion to implement non-ordinary course Compensation and Benefits.

13. Specifically, the Debtor estimates that its owes pre-petition amounts on account of the Compensation and Benefits in approximately the following amounts:

| Relief Sought | Frequency | Per Pay Period | Per Month |
|---|---|---|---|
| Wage Obligation | Biweekly | $70,202.00 | **$140,404.00** |
| Staffing and Contractor Obligations | Monthly | $23,691.67 | **$47,383.33** |
| Payroll Processing Fees | Biweekly | $400.00 | **$800.00** |
| Reimbursable Expenses | Biweekly | $0.00 | **$0.00** |
| Payroll Tax | Biweekly | $17,500.00 | **$35,000.00** |
| Health Insurance Benefits | Monthly | $4,219.15 | **$8,438.30** |
| PTO and Paid Leave Benefit | Accumulated | $0.00 | **$50,300.00** |
| Ancillary Benefit Programs** | See Detail below | $2,713.69 | **$5,427.38** |
| **TOTAL** | | **$118,726.51** | **$287,753.01** |

| **Ancillary Benefit Programs**** | | |
|---|---|---|
| WN (CC, Cancer, HS, Accident, and Life | $733.26 | $1,466.52 |
| Voluntary Optional Life | $12.92 | $25.84 |
| 401K (varies, but best estimate) | $1,500.00 | $3,000.00 |
| 401K loan (if no new loans) | $467.51 | $935.02 |
| Subtotal | $2,713.69 | $5,427.38 |

14. The Debtor does not believe that amounts owed to any individual Employee will exceed the amount entitled to priority status pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Amount").

**A.      Compensation, Withholding, and Expense Reimbursement.**

15. In the ordinary course of business, the Debtor incurs obligations to the Employees for base wages, salaries, and other compensation (the "Wage Obligations"). Employees are typically paid every other Friday (bi-weekly) via direct deposit or other electronic transfer to the Employees' bank accounts.

5

16.     In the twelve-month period preceding the Petition Date, the Debtor paid approximately $140,000.00 per month on average on account of the Wage Obligations. As of the Petition Date, the Debtor believes that not more than $70,000 is owed on account of the Wage Obligations. Out of an abundance of caution, the Debtor requests authority, but not direction, to pay all pre-petition amounts owed on account of the Wage Obligations and to continue honoring the Wage Obligations on a post-petition basis in the ordinary course of business.

17.     The Debtor's failure to honor Wage Obligations would inflict substantial financial hardship on the Employees and could lead to immediate and significant attrition. Considering the indispensable value the Employees provide to the Debtor's estate and the substantial cost in filling sudden and potentially numerous vacancies, it is critical that the Debtor maintains its Employees during the pendency of this Chapter 11 case.

**B.      Staffing and Contractor Obligations.**

18.     In the ordinary course of business, the Debtor incurs payment obligations to various staffing agencies that assist the Debtor in the retention of certain Employees and Independent Contractors (the "Staffing Agencies" and the Debtor's obligations thereto, the "Staffing Agency Obligations"), as well as to Independent Contractors for services rendered to the Debtor (the "Independent Contractor Obligations" and together with the Staffing Agency Obligations, the "Staffing and Contractor Obligations"). The Staffing Agencies and Independent Contractors are paid through the Debtor's accounts payable system following submission of a documented and supported invoice through an internal approval process.

19.     The amount and frequency of payment to the Staffing Agencies and Independent Contractors depends on the type of services they provide or the terms of the governing contracts. In general, the Independent Contractors are paid pursuant to the terms of their contracts or

arrangements, typically monthly. The Debtor spent approximately $47,000.00 per month on average on account of the Staffing and Contractor Obligations.

20.     As of the Petition Date, the Debtor estimates that it may owe up $23,691.00 in accrued and unpaid Staffing and Contractor Obligations. The Debtor believes the authority to pay the Staffing and Contractor Obligations is critical to maintaining and administering its estate. Accordingly, the Debtor requests authority, but not direction, to pay all prepetition amounts owed on account of the Staffing and Contractor Obligations and to continue honoring the Staffing and Contractor Obligations on a post-petition basis in the ordinary course of business.

**C.     Payroll Processing Fees.**

21.     In the ordinary course of business, the Debtor utilizes software provided by ADP to support payroll processing, payroll tax calculations and filings, and other payroll-related services and, correspondingly, pay certain software, payroll-related contractors, and other administrative fees to ADP (the "Payroll Processing Fees"). In the ordinary course of business, the Debtor accrues Payroll Processing Fees monthly. In the twelve-month period preceding the Petition Date, the Debtor paid approximately $800.00 per month on average on account of the Payroll Processing Fees. As of the Petition Date, the Debtor estimates that it owes not more than $400.00 in accrued and unpaid Payroll Processing Fees.

22.     Maintaining access to the payroll processing and application hosting services that ADP provides is critical to the Debtor's continued operations in this Chapter 11 case, and failure to satisfy the Payroll Processing Fees could disrupt payroll processing and delay the disbursement of payroll taxes to the appropriate third parties to the detriment of the Employees and the Debtor's operations. Accordingly, the Debtor requests authority, but not direction, to pay and remit the

Payroll Processing Fees to ADP and to continue administering payroll through ADP on a post-petition basis in the ordinary course of business.

**D.     Payroll Taxes**

23.     In the ordinary course of business, the Debtor is required to pay employer and employee related payroll taxes and deduct taxes from Employees' paychecks (the "Payroll Taxes"). The Debtor uses ADP to determine the Payroll Taxes, which the Debtor subsequently distribute to various third-party recipients.

24.     As of the Petition Date, the Debtor does not believe that any amounts are owed on account of the Payroll Taxes. Nevertheless, out of an abundance of caution, to fulfill its obligations under the applicable Payroll Taxes, the Debtor requests authority, but not direction, to pay or remit all pre-petition Payroll Taxes and to continue to pay Payroll Taxes on a post-petition basis in the ordinary course of business.

**E.     Health Insurance and Pension Benefits.**

25.     In the ordinary course of business, the Debtor offers private health insurance coverage and certain other welfare benefits to eligible Employees (collectively, the "Health Insurance Benefits"). In the twelve-month period preceding the Petition Date, the Debtor paid approximately $8,400.00 per month on average on account of the Health Insurance Benefits. As of the Petition Date, the Debtor estimates that it owes not more than $4,219.15 in accrued and unpaid obligations on account of the Health Insurance Benefits.

26.     Failure to continue the Health Insurance Benefits could cause the Employees to experience severe hardship and make it difficult to retain the Employee base. Accordingly, the Debtor requests authority, but not direction, to pay all prepetition obligations on account of the

8

Health Insurance Benefits and to continue paying all obligations on account of the Health Insurance Benefits on a post-petition basis in the ordinary course of business.

**F.  PTO and Paid Leave Benefits**

27.  In the ordinary course of business, the Debtor provides Employees with paid time-off benefits for vacation, sick days, and holidays (the "PTO Benefits"). As of the Petition Date, the Debtor estimates that it does not owe any accrued but unpaid PTO and Paid Leave Benefits. On average, however, PTO Benefits average $50,300.00 per month. Importantly, this accrued amount does not require any cash outlay beyond the Debtor's normal payroll obligations except in certain situations, such as where an eligible Employee's employment is terminated.

28.  Continuing the PTO Benefits is essential to maintaining Employee morale during this Chapter 11 case. The PTO Benefits are an important part of Employee welfare, and the Debtor anticipates the Employees will continue to make use of the PTO Benefits. The Debtor's failure to honor the accrued PTO Benefits when such obligations are due to an Employee is likely to undermine Employee loyalty and morale. Accordingly, the Debtor requests authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the PTO Benefits and to continue to make all payments on a post-petition basis in the ordinary course of business.

**G.  Ancillary Benefits**

29.  In addition to the foregoing, in the ordinary course of business, the Debtor also offer Employees a range of ancillary benefits such as 401k and life insurance (collectively, the "Ancillary Benefit Programs"). In the twelve-month period preceding the Petition Date, the Debtor paid or contributed approximately $5,400.00 per month on average on account of accrued costs associated with the Ancillary Benefit Programs. As of the Petition Date, the Debtor estimates that it will owe not more $2,700 in accrued and outstanding amounts on account of the Ancillary

9

Benefit Programs. The Ancillary Benefit Programs are an important component of the compensation package that the Employees have come to expect. Accordingly, to maintain Employee morale, the Debtor requests authority, but not direction, to pay all pre-petition obligations on account of Ancillary Benefit Programs and to continue to pay all obligations on account of Ancillary Benefit Programs on a post-petition basis in the ordinary course of business.

## VI. BASIS FOR RELIEF

30. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Compensation and Benefits owed to the Employees to priority treatment. As priority claims, the Debtor is required to pay these claims in full to confirm a Chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B). Granting the relief sought herein should only affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors. Payment of the Compensation and Benefits at this time enhances value for the benefit of all interested parties. *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("The need to pay [employee wage] claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted."). To the extent that an Employee receives no more than the Priority Amount on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to such Employees and does not have any material negative impact on recoveries for general unsecured creditors. *Id*. 58. The Employees are essential to the success of this Chapter 11 case and the Debtor's business, and timely payment of the Compensation and Benefits at this time reduces the risk of Employee attrition and preserves and enhances the value of the Debtor's estate for the benefit of all parties in interest. Finding, attracting, and training new

10

qualified talent, especially in the early days of this Chapter 11 case, would be extremely difficult and likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than those currently provided to the Debtor's workforce. To avoid potentially costly disputes that could disrupt the Debtor's business and reduce the value of the Debtor's estate, and to ease potential concerns from the workforce regarding ongoing compensation, it is necessary to timely and adequately pay any accrued and unpaid amount on account of Compensation and Benefits in the ordinary course of business.

31. The Debtor requests authority, but not direction, to pay the applicable Payroll Taxes to the appropriate third-party entities. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Certain Payroll Taxes are not property of the Debtor's estate because the Debtor has withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d); *see also In re Equalnet Commc'ns*, 258 B.R. at 370 (noting that, for tax obligations where funds are held by the debtor in trust, "the legal right to payment of such claims at any time appears irrefutable.") (citing *In re Al Copeland Enter., Inc.*, 991 F.2d 233 (5th Cir. 1993)).

32. Furthermore, non-bankruptcy law requires the Debtor to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes); Because

11

the Payroll Taxes may not be property of the Debtor's estate, the Debtor requests authority, but not direction, to transmit the Payroll Taxes on account of the Employees to the proper parties in the ordinary course of business. The Debtor therefore requests that the Court recognize that the Payroll Taxes are not property of the Debtor's estates and, regardless of whether the Debtor collected the amounts prior to the Petition Date, authorize the Debtor to transmit such monies to the proper parties in the ordinary course of business.

33. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See*, *e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to the "doctrine of necessity"). Several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

34. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497). Under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *CoServ*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for

12

a debtor-in-possession to pay prepetition claims). Courts also apply section 105(a) pursuant to the "doctrine of necessity," which functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *Id*. Moreover, the doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176. The above-referenced sections of the Bankruptcy Code therefore authorize the post-petition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.

35.     These standards are satisfied here. Paying the Compensation and Benefits represents a sound exercise of the Debtor's business judgment and is necessary to avoid immediate and irreparable harm to the Debtor's estates and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying prepetition wages, employee benefits, and similar obligations will benefit the Debtor's estate and its creditors by allowing the Debtor's business operations to continue without interruption during the pendency of this Chapter 11 case. Without the relief requested herein, the Debtor's workforce may seek alternative employment opportunities. Such a development would deplete the Debtor's workforce, thereby hindering the Debtor's ability to operate its business and diminish stakeholder confidence in the Debtor's ability to successfully reorganize. The loss of valuable members of the Debtor's workforce and the resulting need and costs to recruit new personnel would be distracting at time when the Debtor can simply not afford it. Moreover, many members of the Debtor's workforce are highly trained individuals that are indispensable to the Debtor's operations and difficult to replace. Accordingly,

the Debtor must retain the its workforce by, among other things, continuing to honor all wage, benefits, and related obligations, including the Compensation and Benefits.

36. In addition, most members of the Debtor's workforce rely exclusively on the Compensation and Benefits to satisfy their (and their dependents') daily living expenses. Many members of the Debtor's workforce expect and require their wages to arrive on a timely basis. Consequently, the Debtor's workforce will be exposed to significant financial difficulties if the Debtor is not permitted to honor its obligations related thereto expeditiously. Failure to timely satisfy such obligations will jeopardize workforce morale and loyalty at a time when Debtor's workforce support is critical to the Debtor's business continuity. Furthermore, if this Court does not authorize the Debtor to honor its various obligations under the benefit and insurance programs described herein, Employees may not receive the full and expected health coverage and, thus, may be obligated to pay certain health care claims that the Debtor has not satisfied. The potential loss of health care coverage may result in considerable anxiety for Employees (and likely attrition) at a time when the Debtor needs such Employees to perform their jobs at peak efficiency.

**VII.**
**PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED**

37. The Debtor will have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. Under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtor does not believe that checks or wire transfer requests that are unrelated to authorized payments will be honored inadvertently. The Debtor requests that the Court authorize all applicable financial

14

institutions, when the Debtor requests, to receive, process, honor, and pay any and all checks, direct debit, wire transfer, ACH, or other payment requests in respect of the relief requested herein.

## VIII.
## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

38.     The Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## IX.
## RESERVATION OF RIGHTS

39.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; (h) a concession that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties-in-interest are expressly reserved to

15

contest the extent, validity, or perfection or seek avoidance of all such liens; (i) a waiver of the obligation of any party in interest to file a proof of claim; or (j) otherwise affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party-in-interest's rights to subsequently dispute such claim.

**WHEREFORE**, the Debtor requests entry of an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Date: March 18, 2026

Respectfully submitted by:

*/s/ Ryan J. Richmond*
**STERNBERG, NACCARI & WHITE, LLC**
Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801-1819
Telephone: (225) 412-3667
Facsimile: (225) 286-3046
Email: ryan@snw.law

*Proposed Interim Attorneys for*
*Swiftships, LLC*

16