**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **SWIFTSHIPS, LLC** | § | **Case No. 26-50237** |
| | § | |
| **Debtor.** | § | |

**LIMITED OBJECTION TO DEBTOR'S MOTION FOR FINAL ORDER (1)
AUTHORIZING USE OF CASH COLLATERAL; (2) GRANTING ADEQUATE
PROTECTION; AND (3) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors of Swiftships, LLC (the "***Committee***")
appointed in the above-captioned case (the "***Chapter 11 Case***"), files this objection (the
"***Objection***") to *Debtor's Motion for Final Order (1) Authorizing use of Cash Collateral; (2)
Granting Adequate Protection; and (3) Granting Related Relief* [Dkt. No. 12] (the "***Cash
Collateral Motion***"). In support of the Objection, the Committee respectfully represents as
follows:

<strong>BACKGROUND</strong>

1. On March 18, 2026 (the "***Petition Date***"), Swiftships, LLC (the "***Debtor***") filed a
voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States
Bankruptcy Court for the Western District of Louisiana, Lafayette Division (the "***Court***").

2. The Debtor continues to manage and operate its business as a debtor in possession
pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On April 13, 2026, the Office of the United States Trustee filed that certain *Notice
of Appointment of Unsecured Creditors' Committee* [Doc. No. 71], appointing a Committee
pursuant to section 1102 of the Bankruptcy Code. The Committee consists of the following
Committee members: (i) Consolidated Electrical Distributors and (ii) AIT Machine, LLC.

4. Since its appointment, the Committee has been engaged in communicating with

Debtor's counsel, reviewing the bankruptcy schedules and statement of financial affairs, and working to identify any and all sources of value to fund distributions to general unsecured creditors, which may include causes of action including avoidance actions and breach of fiduciary duty claims, as well as other assets that may be discovered through the Committee's investigation. These investigations are still in their infancy.

5.      The Debtor's capital structure appears to be (i) a loan by the U.S. Small Business Administration (the "**SBA**") secured by a UCC financing statement that grants the SBA a security interest in the Debtor's cash in accounts and account receivables and (ii) numerous liens asserted against the M/V Risen Sun (the "*Vessel*").  The Debtor has not presented a detailed analysis of the validity of the SBA's security interest nor the Vessel liens in connection with the Cash Collateral Motion.

6.      On the Petition Date, the Debtor filed the Cash Collateral Motion seeking to use cash collateral held in the Debtor's accounts, which may be subject to SBA's security interest. The Debtor also suggests in the Cash Collateral Motion that the SBA asserts a lien against the Vessel as "inventory."  The Debtor states that there is an immediate need to use cash collateral for the purpose of "meeting necessary expenses incurred in the ordinary course of its business, including payroll and the costs associated with its restructuring and these proceedings, while it restructures and reorganizes its indebtedness and business in a manner that maximizes value and is fair and equitable to all parties-in-interest."  The Debtor is offering adequate protection to the SBA but only to the extent that the SBA possesses a pre-petition lien.  The Debtor provides no analysis of whether any liens asserted against the Vessel are avoidable or otherwise unenforceable. The Debtor included a Budget to the Cash Collateral Motion, which is attached hereto as **<u>Exhibit A</u>** (the "***Budget***").

7.      On April 16, 2026, the Debtor filed its *Schedules* [Dkt. No. 52] and *Statement of*

*Financial Affairs* [Dkt. No. 53].

8.      The Budget suggests that the Debtor will receive approximately $2.5 million in "TOTAL CASH INFLOW" during the first 13 weeks of the Chapter 11 Case.  It is unclear to the Committee where such cash inflow will be generated.

9.      Schedule A does not identify any cash in accounts held by the Debtor but identifies an "LC with the DCS Egypt customer" in the amount of $1,500,000.  It is unclear whether this amount is currently held by the Debtor.  The Debtor also lists $375,000 in accounts receivable as "doubtful or uncollectable accounts."  The Debtor lists over $28 million in inventory, though the Cash Collateral Motion makes no mention of any on-going work or plans for such inventory. Schedule G does not identify any executory contracts for on-going work that the Debtor could assume that would otherwise amount to future receivables or use of existing inventory.

### OBJECTION

10.      The Committee submits that the Debtor's true capital structure remains unclear from these filings, specifically with respect to the need for using cash collateral.  In other words, the Debtor has not, and cannot, meet its burden to establish that the use of cash collateral, as currently proposed, is fair and reasonable to all creditors.

11.      The Debtor's valuation of the SBA security interest (as reflected in the Schedules) is unclear, as well as the extent of any liens asserted against the Vessel.  The Debtor's Budget reflects amounts that should have been received by the estate within the first three weeks of the case; however, the Committee is not aware of ANY funds received by the estate.  At this stage, recovery for general unsecured creditors is uncertain.

12.      Although the Committee's investigation has only recently begun, the Committee's work is to identify if any unencumbered assets exist, including, but not limited to, avoidance actions, commercial tort claims, and D&O claims, among others.  For these, the Committee objects

3

to granting replacement liens upon available cash that could be used to pay unsecured creditors absent a clear understanding of the Debtor's capital structure and a showing of actual need for the use of such cash that could maximize value for the estate.

13.     Namely, any final cash collateral order should not provide liens or claims on previously unencumbered assets.  While the Debtor does not appear to be seeking such relief, it is unclear to the Committee what assets may be unencumbered (specifically as it relates to the Vessel and any lien asserted by the SBA).

14.     For instance, Courts in this Circuit have expressed hesitation to grant liens on previously unencumbered assets of a debtor's estate, where such assets would otherwise inure to the benefit of unsecured creditors without a showing of "extraordinary circumstances."  *See In re Laffite's Harbor Dev. I, LP*, No. 17-36191-H5-11, 2018 Bankr. LEXIS 2, at \*7 (Bankr. S.D. Tex. Jan. 2, 2018).  This includes avoidance actions.  The intent behind avoidance powers and a debtor's power to bring causes of action is to allow the debtor in possession to gain recoveries for the benefit of all unsecured creditors.  *See McFarland v. Leyh (In re Tex. Gen. Petrol. Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995) ("[T]he proceeds recovered in an avoidance action satisfy the claims of priority and general unsecured creditors before the debtor benefits."); *ASARCO LLC v. Americas Mining Corp.*, 404 B.R. 150, 161 (S.D. Tex. 2009) ("[T]he ultimate purpose of most fraudulent-transfer laws, and in particular § 550, is to protect unsecured creditors, and, as far as possible, to make them whole."); *Cullen Ctr. Bank & Tr. v. Hensley (In re Criswell)*, 102 F.3d 1411, 1414 (5th Cir. 1997) (noting that avoidance powers under the Bankruptcy Code were created to "facilitat[e] the prime bankruptcy policy of equality of distribution among creditors of the debtor").  It appears that the Debtor is not seeking such relief in favor of the SBA; nonetheless, the Committee raises the objection in the event that circumstances change and an attempt is made to grant protections to the SBA that are not supported by the case law.  Here, unsecured creditors already face uncertain

4

recoveries, and avoidance actions and other estate causes of action may represent their sole meaningful source of recovery.

15. Regarding adequate protection for the SBA, the Committee has no objection to granting adequate protection to allow on-going operations; however, it is unclear whether there will be any future operations. Further, it is unclear what accounts and what cash is actually encumbered by SBA's security interest.

16. There has been no demonstration to the Committee (nor this Court) that the SBA holds an account control agreement over the Debtor's deposit accounts and what cash is actually attributable to such accounts for purpose of use as cash collateral. What is apparent to the Committee is that no cash collateral existed as of the filing of the Chapter 11 Case.

17. Lastly, the Debtor's Budget is unrealistic and provides inadequate information to the Court and Committee to assess the need and benefit for the estate's use of cash collateral. The proposed Budget suggests that the Debtor will have received over $2.5 million in cash by the date of the hearing on the Cash Collateral Motion. If that were the case, what is the basis for granting adequate protection to the SBA whose purported security interest is less than $2.3 million?

18. As of now, the Committee is willing to consider that the path forward for the benefit of all parties is not conversion. The Committee believes that the Debtor (with the assistance of the Committee) should work to identify the Debtor's actual capital structure and the value of any assets, including unencumbered assets, along with getting a handle on a real budget. The Committee is also supportive of a streamlined process that maximizes the value of the Vessel for the benefit of all interested parties. As such, the Committee is amenable to a limited use of cash collateral for these purposes but will not support an approach that benefits one secured creditor under the current circumstances of this case.

**RESERVATION OF RIGHTS**

19.     Nothing contained herein shall constitute a waiver of any of the Committee's rights or remedies under the Bankruptcy Code or applicable law, including, without limitation the right to supplement this Objection prior to or to otherwise assert additional objections to the Cash Collateral Motion.

Dated: May 5, 2026.

Respectfully submitted,

**KELLY HART PITRE**

*/s/ Rick M. Shelby*
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Rick M. Shelby (LA #31963)
Amelia L. Hurt (LA #36817)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: rick.shelby@kellyhart.com
        amelia.hurt@kellyhart.com

*Proposed Counsel for the Official Committee of*
*Unsecured Creditors of Swiftships, LLC*

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the above and foregoing document has, on this May 5, 2026, been served on all counsel of record via e-service.

*/s/ Rick M. Shelby*
Rick M. Shelby