**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **SWIFTSHIPS, LLC** | § | **Case No. 26-50237** |
| | § | |
| **Debtor.** | § | |

**NOTICE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE DEBTOR PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule of Bankruptcy Procedure 2004-1(b), the Official Committee of Unsecured Creditors (the "**Committee**") of Swiftships, LLC (the "**Debtor**"), by and through its undersigned proposed counsel, hereby gives notice of requests that the Debtor produce the documents and communications described below (the "**Requests**") at the offices of Kelly Hart Pitre, 400 Poydras Street, Suite 1812, New Orleans, Louisiana 70130, or by electronic production to the email addresses of undersigned counsel, on or before the date that is fourteen (14) days from the date of service hereof.

## DEFINITIONS AND INSTRUCTIONS

The term "**Debtor**" means Swiftships, LLC, and its predecessors, successors, agents, employees, officers, directors, managers, members, attorneys, accountants, financial advisors, representatives, and all other Persons acting or purporting to act on its behalf.

The term "**Petition Date**" means March 18, 2026.

The term "**Insider**" has the meaning given in 11 U.S.C. § 101(31) and includes, without limitation, Shahraze Shah, Swiftships Group, Inc. and any officer, director, managing member, member, or person in control of the Debtor, any relative of any of the foregoing, and any Affiliate and any insider of any such affiliate.

The term "**Affiliate**" has the meaning given in 11 U.S.C. § 101(2) and includes, without limitation, BOT LLC, Trojan Firearms LLC, and any entity operating at 4116 Walney Road, Suite D, Chantilly, Virginia 20151.

The term "**Document**" is used in the broadest sense permitted under Federal Rule of Civil Procedure 34, made applicable by Federal Rules of Bankruptcy Procedure 7034 and 9014, and includes, without limitation, all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, emails, text messages, instant messages, voicemails, calendar entries, and other data or data compilations stored in any medium.

The term "**Communication**" means any transmission of information from one Person to another, by any means, including without limitation by email, text message, instant message, letter, memorandum, voicemail, or in person.

The term "**Schedules**" means the Debtor's Schedules of Assets and Liabilities filed at

1

Docket No. 52.

The term "**SOFA**" means the Debtor's Statement of Financial Affairs filed at Docket No. 53.

The term "**Vessel**" means the M/V Risen Sun, Official Number 1255897, IMO Number 9773105.

The term "**SBA**" means the United States Small Business Administration.

The term "**Concerning**" means concerning, regarding, relating to, referring to, describing, evidencing, constituting, supporting, refuting, or in any way logically connected to.

The term "**Relevant Period**" means, unless otherwise specified, the period from January 1, 2023 through and including the date of production.

**Instructions.** The Debtor shall produce all responsive Documents in its possession, custody, or control, and shall identify any Document withheld on the basis of privilege or any other claim of immunity in a privilege log conforming to Federal Rule of Civil Procedure 26(b)(5). These Requests are continuing in nature, and the Debtor shall supplement its responses promptly upon learning that any prior response was incomplete or incorrect.

## I.      Financial Statements and Books and Records

1.      All audited, reviewed, compiled, or internally prepared financial statements of the Debtor for fiscal years 2023, 2024, 2025, and year-to-date 2026, including balance sheets, income statements, statements of cash flow, statements of members' equity, and all notes and schedules.

2.      All monthly internal financial reports, management financial packages, and board or member reporting packages of the Debtor for the Relevant Period.

3.      All general ledgers, trial balances, and chart of accounts of the Debtor for the Relevant Period.

4.      All federal and state income tax returns of the Debtor for tax years 2022 through 2025, including all schedules, attachments, and supporting workpapers, and all Documents Concerning the $3,827,456 net operating loss carryforward identified at Schedule A/B Question 72.

5.      All accounts payable and accounts receivable agings as of the last day of each month during the Relevant Period.

6.      All Documents sufficient to identify each Person who has had access to, possession of, or custody over the Debtor's books and records during the Relevant Period, and the location of all such books and records as of the Petition Date.

## II.      Cash, Bank Accounts, and the DCS Egypt Letter of Credit

7.      All bank statements, account statements, and reconciliations for each account identified in Schedule A/B Exhibit 1 (Swiftships NBoE x5-010, Patterson State Bank 28m CDA, Swiftships PNC x8759, Prepay Credit Card PEX card, Swiftships Patterson State x6401, and Swiftships PATTERSON x0401) for the 24 months preceding the Petition Date through the date

2

of production.

8. All Documents Concerning the $1,500,000 Letter of Credit with the DCS Egypt customer (the "**LC**"), including the LC itself, the issuing bank's documentation, the underlying contract, all drawing conditions, all amendments, and all Communications Concerning the LC with the DCS Egypt during the Relevant Period.

9. All Communications between the Debtor and DCS Egypt (or any agent, broker, or representative thereof) during the Relevant Period Concerning the LC, the closed or cancelled Egypt-DCS or Egypt-FMS programs, the $375,070 accounts receivable identified in Schedule A/B Exhibit 3, and any claim, setoff, recoupment, default, or termination.

10. All Documents Concerning any deposit account control agreement, lockbox arrangement, or restriction on any of the Debtor's accounts.

### III. Inventory, Program Property, and Government and Foreign Contracts

11. All Documents Concerning the inventory listed in Schedule A/B Exhibit 4 and SOFA Exhibit D, including without limitation perpetual inventory records, physical count records, valuation analyses, cost reports, write-down or impairment analyses, and the methodology and inputs supporting the $3,563,391.94 fair market value assigned to the cancelled program / dead stock inventory.

12. All Documents identifying the owner of each item of "Program Inventory" (Column A of SOFA Exhibit D) and the contractual or statutory basis on which the Debtor holds, possesses, or controls such Program Inventory, including without limitation all contracts, government-furnished property agreements, bailment agreements, consignment agreements, and program documentation for the LCU 1700, Prod-WH, Egypt-FMS, MUSVL/USVL, LCU 2000, Egypt-DCS, OLD Closed, Striker, DIU, CRANE, Bahrain, PNGB, and WIP programs.

13. All Communications during the Relevant Period between the Debtor and any U.S. Government agency, foreign government, prime contractor, or program partner Concerning any program identified in SOFA Exhibit D, including without limitation any cure notice, notice of default, suspension, stop-work order, termination for convenience, termination for default, request for equitable adjustment, or claim.

14. All Documents Concerning the unbilled accounts receivable identified in Schedule A/B Exhibit 7 (Bahrain Navy, FMS Egyptian Navy 28M CPC, Defense Innovation Unit ELC Hull DIU10002, US Navy CG-9, Egypt Navy Hull 641-642, and Pakistan Navy PNGB), including the underlying contracts, milestones, deliverables, and invoicing records.

### IV. The Vessel

15. All Documents Concerning the Vessel, including all certificates of documentation, U.S. Coast Guard recordings, classification society records, insurance policies and binders, surveys, appraisals (including without limitation the appraisal supporting the $7,500,000 value reflected on Schedule A/B), maintenance records, dockage and storage agreements, and crewing arrangements.

16. All Documents Concerning any seizure, attachment, sequestration, or arrest of the Vessel, and any release or substitution of custody.

3

17.     All Documents Concerning each Person asserting a lien, mortgage, judgment lien, or maritime lien against the Vessel, including without limitation Industrial Alliance Services LLC, K.A.D., LLC, LeBlanc & Associates, Patterson State Bank, and Louisiana Machinery Company, and all Communications with each such Person during the Relevant Period.

18.     All Documents Concerning any analysis of the avoidability, validity, perfection, or priority of any lien asserted against the Vessel.

19.     All Documents Concerning any expression of interest, indication of interest, offer, letter of intent, or marketing effort regarding the sale, charter, or other disposition of the Vessel.

## V.     SBA Loan and Lien

20.     All Documents Concerning the SBA loan, including the loan agreement, note, security agreement, all UCC-1 financing statements and continuation statements, all amendments, all forbearance or default correspondence, and the Debtor's payment history for the Relevant Period.

21.     All Documents Concerning any guaranty, indemnity, or pledge by any Insider or third party of the Debtor's obligations to the SBA.

22.     All Communications between the Debtor and the SBA during the Relevant Period.

## VI.     Affiliate and Insider Transactions

23.     All Documents Concerning the ownership, governance, officers, directors, managers, and members of BOT LLC, and all organizational documents, operating agreements, and capitalization tables of BOT LLC.

24.     All Documents Concerning the $2,525,605.53 note receivable from BOT LLC identified in Schedule A/B Question 71, including the underlying note, security agreement, all amendments, and all payment, advance, and accrual records for the Relevant Period.

25.     All Documents Concerning the lease of real property at 1105 Levee Road, Morgan City, Louisiana 70381 from BOT LLC identified in Schedule G, including the lease, all amendments, market-rent analyses, payment records, and any setoff, offset, or netting arrangement between the lease obligation and the BOT LLC receivable.

26.     All Documents Concerning the ownership, governance, officers, directors, managers, and members of Trojan Firearms LLC, and all organizational documents and operating agreements.

27.     All Documents Concerning the $327,858.29 note receivable from Trojan Firearms LLC identified in Schedule A/B Question 71, including the underlying note, security agreement, all amendments, and all payment, advance, and accrual records for the Relevant Period.

28.     All Documents Concerning any entity operating at 4116 Walney Road, Suite D, Chantilly, Virginia 20151, including its relationship to the Debtor, common ownership, common control, shared employees, shared services, shared books and records, and any intercompany transactions with the Debtor.

29.     All Documents Concerning any intercompany transaction (including loans,

4

advances, expense allocations, service charges, payroll, employee leasing, management fees, royalties, and equipment transfers) during the Relevant Period between the Debtor and any Affiliate or Insider.

30.     All Documents Concerning all compensation, salary, bonus, commission, draw, distribution, expense reimbursement, perquisite, insurance premium, fringe benefit, and any other value provided by the Debtor during the Relevant Period to Shahraze Shah, any other Insider, or any Affiliate.

31.     All Documents Concerning the unnamed "Shareholder" identified in SOFA Exhibit B as the beneficiary of $7,550 in life insurance premiums paid by the Debtor.

## VII.     Directors and Officers — Conduct, Insurance, and Indemnification

32.     All Documents Concerning the ownership, governance, officers, directors, managers, and members of the Debtor, and all organizational documents, operating agreements, and capitalization tables of the Debtor.

33.     All Documents Concerning each directors and officers liability insurance policy, side-A policy, side-B policy, side-C policy, management liability policy, fiduciary liability policy, employment practices liability policy, errors and omissions policy, and excess or umbrella policy covering the Debtor or any current or former officer, director, manager, or member of the Debtor at any time during the Relevant Period, including without limitation: the declarations, policy form, all endorsements, all applications and renewal applications, all binders, all certificates of insurance, the full premium history, the retention or self-insured retention, and any tail or run-off coverage.

34.     All Documents and Communications Concerning any notice of claim, notice of circumstance, reservation of rights, coverage opinion, denial of coverage, or other Communication with any insurer Concerning any policy identified in response to the preceding Request.

35.     All Documents Concerning any indemnification agreement, indemnification bylaw or operating agreement provision, or indemnification right in favor of any current or former officer, director, manager, or member of the Debtor.

36.     All Documents Concerning the Debtor's compliance program, internal controls, code of conduct, conflicts of interest policy, related-party transaction policy, and ethics policy during the Relevant Period.

37.     All minutes, resolutions, written consents, and other records of meetings or actions of the Debtor's members, managers, officers, directors, or any committee thereof during the Relevant Period, and all materials distributed or presented in connection with any such meeting.

38.     All Documents Concerning the Debtor's solvency analysis, going-concern assessment, liquidity projections, and cash flow forecasts at any point during the Relevant Period, including without limitation any analysis prepared in connection with the cancellation or wind-down of the Egypt-DCS, Egypt-FMS, OLD Closed, or Prod-WH programs, and any dividend, distribution, or transfer to any Insider during any period in which the Debtor was insolvent or in the zone of insolvency.

39.     All Documents Concerning the decision-making process leading to, and the

5

financial and operational consequences of, the cancellation, termination, or wind-down of each program identified as cancelled or closed in SOFA Exhibit D, including the contemporaneous analyses of the resulting inventory write-downs.

## VIII.  Litigation, Judgments, and Causes of Action

40.    All Documents Concerning each judgment listed in SOFA Exhibit C, including the underlying pleadings, judgment, post-judgment proceedings, satisfaction or payment records, appeals, judicial mortgage recordings, and writs of fieri facias or seizure.

41.    All Documents Concerning any pending or threatened litigation, arbitration, mediation, administrative proceeding, government investigation, or demand asserted by or against the Debtor at any time during the Relevant Period.

42.    All Documents Concerning any claim, counterclaim, setoff right, recoupment right, breach of contract claim, warranty claim, indemnification claim, commercial tort claim, or other cause of action that the Debtor has or may have against any third party, including without limitation any program counterparty, vendor, prime contractor, supplier, professional, lender, or Affiliate, notwithstanding the disclaimers reflected in Schedule A/B Questions 73, 74, and 75.

## IX.    Pre-Petition Transfers and Restructuring Communications

43.    All Documents supporting each entry in SOFA Exhibit A (90-day transfers to non-insiders totaling $584,685.06) and SOFA Exhibit B (insider transfers), including underlying invoices, contracts, statements of account, and Communications evidencing the relationship and the consideration for each transfer.

44.    All Documents Concerning any payment, advance, transfer, repayment, or other value provided by the Debtor to or for the benefit of any Insider or Affiliate during the four years preceding the Petition Date.

45.    All Documents Concerning any debt restructuring, refinancing, sale, recapitalization, or insolvency analysis or proposal evaluated by the Debtor during the two years preceding the Petition Date.

## X.    Cash Collateral Budget and Go-Forward Plan

46.    All Documents Concerning the preparation, assumptions, and supporting analysis for the Budget attached to the Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief [Dkt. No. 12], including without limitation source documentation for the projected $2.5 million in receipts.

47.    All actual cash receipts, cash disbursements, and bank statement records of the Debtor for the period beginning on the Petition Date through the date of production, together with all post-petition variance reports comparing actual results to the Budget.

48.    All Documents Concerning any restructuring proposal, term sheet, indication of interest, sale process, investment banker or broker engagement, debtor-in-possession financing proposal, or exit strategy considered by the Debtor at any time during the Relevant Period.

Dated: May 20, 2026.

Respectfully submitted,

**KELLY HART PITRE**

/s/ Rick M. Shelby
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Rick M. Shelby (LA #31963)
Amelia L. Hurt (LA #36817)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: rick.shelby@kellyhart.com
         amelia.hurt@kellyhart.com

***Proposed Counsel for the Official Committee of Unsecured Creditors of Swiftships, LLC***

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document has, on this May 20, 2026, been served on all counsel of record via e-service.

/s/ Rick M. Shelby
Rick M. Shelby

7