IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: | Case No. 26-50237 |
| SWIFTSHIPS, LLC,[1] | Chapter 11 |
| *Debtor-in-Possession*. | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING CERTAIN EXISTING DEPOSIT ACCOUNTS MAINTAINED AT PATTERSON STATE BANK**

**NOW INTO COURT**, through undersigned counsel, comes Swiftships, LLC (the "Debtor"), who moves for entry of an order authorizing the continued use of certain existing deposit accounts maintained at Patterson State Bank. In support, the Debtor represents:

**I.      JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 363(c), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), together with Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure.

**II.      BACKGROUND**

3.      On March 18, 2026 (the "Petition Date"), the Debtor commenced this chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[1] The last four digits of the Debtor's federal tax identification number are 8795. The Debtor's mailing address is 1105 Levee Road, Morgan City, LA 70380.

4. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. No trustee or examiner has been appointed in this chapter 11 case. An official committee of unsecured creditors has been appointed.

6. The Debtor is a Louisiana limited liability company headquartered in St. Mary Parish, Louisiana.

7. The Debtor is engaged in the business of shipbuilding and marine manufacturing. In the ordinary course of its business, the Debtor designs, constructs, repairs, and services both civilian and military vessels. Its operations involve long-term construction contracts, substantial vendor coordination, payroll obligations, materials procurement, and project-specific cash administration.

8. Due to the nature of the Debtor's shipbuilding operations, including multi-phase vessel construction programs and contract-specific financial administration, the Debtor maintains a structured internal cash management process designed to monitor and administer funds associated with ongoing vessel construction and related operational obligations.

9. The Debtor's operations include four shipbuilding and maritime-related programs involving domestic defense, foreign military, and direct commercial vessel production efforts. Collectively, these programs generate contract-related receipts, vendor obligations, procurement costs, labor expenses, and performance-related disbursements that are administered through the Debtor's existing cash management system. The three Patterson State Bank accounts at issue serve as a core component of that system and are used to receive, track, administer, and disburse program-related funds in connection with these projects. Accordingly, continued access to and use

of such accounts is necessary to preserve operational continuity, maintain financial accountability, and avoid disruption to active and unresolved contractual obligations.

10.    ***LCU 1700 Program***. The LCU 1700 program was a vessel construction program for the United States Marine Corps administered through NAVSEA under Contract No. N00024-18-C-2401. Swiftships maintained a dedicated CDA account at Patterson State Bank associated with this program and tied to payments received under the applicable CAGE code. Although the program was terminated following alleged delivery-related issues, the related account remains active because unresolved financial and administrative matters remain outstanding, including vendor payment issues and contract-related payment reconciliation. The account continues to be associated with program-specific funds, obligations, and financial tracking. As a result, maintaining the account remains necessary for orderly administration of remaining matters related to the program.

11.    ***Expeditionary Littoral Craft (ELC) Program***. The Expeditionary Littoral Craft (ELC) program is an active vessel construction project for the United States Marine Corps Reserve administered through the Defense Innovation Unit under Contract No. HQ0845-23-9-0052. Swiftships maintains a non-CDA Patterson State Bank account associated with this program through which contract-related funds are received. The program involves the construction of multiple boats, including vessels that have already been delivered and vessels that remain in production. Certain vessels remain at the shipyard for training-related purposes, while additional vessels are still being completed. The associated bank account remains integral to tracking project-specific receipts, vendor payments, procurement costs, and ongoing performance obligations.

12.    ***28-Meter Coastal Patrol Craft (CPC) Kit Production Program (FMS)***. The 28-meter Coastal Patrol Craft Kit Production program is an active Foreign Military Sales program

involving kit production for the Egyptian Navy under NAVSEA Contract No. N00024-22-C-2201. Swiftships maintains a CDA account at Patterson State Bank associated with this program and tied to contract-related receipts under its CAGE code. Under this program, parts and materials are packaged and shipped for co-production efforts involving the Egyptian Navy. Program funding and disbursement are tied to ongoing governmental contract administration and performance requirements. Swiftships continues to maintain the associated account because it remains connected to project-specific receipts, administration, and potential continuation discussions regarding the program.

13. ***28-Meter Coastal Patrol Craft (CPC) Kit Production Program (DCS)***. The 28-meter Coastal Patrol Craft Kit Production program under the Direct Commercial Sales arrangement is an active commercial program directly contracted with Swiftships for work involving the Egyptian Navy. Unlike the FMS program, payments under this arrangement are made directly in connection with Swiftships' contractual performance obligations. The program represents a continuation of related patrol craft and maritime production efforts and includes the completion and delivery of associated marine equipment, including an unmanned vehicle component. Program-related funds are tied to contract performance and direct payment obligations. Because the program remains active and performance-related funds remain associated with it, the related financial infrastructure remains material to Swiftships' continuing operations and project administration

## III. THE PATTERSON STATE BANK ACCOUNTS

14. In the ordinary course of business, the Debtor maintains three deposit accounts at Patterson State Bank (collectively, the "<u>Bank Accounts</u>").[2] The Bank Accounts are used to

---

[2] The Bank Accounts are identified in Schedule AB. (ECF No. 52, Ex. 1)

administer estate funds and contract-related cash flows associated with the Debtor's shipbuilding operations.

15. Each of the Bank Accounts is maintained solely in the Debtor's name.

16. The Bank Accounts are used in connection with the four shipbuilding and maritime-related programs described above, including the receipt, segregation, administration, reconciliation, and disbursement of funds associated with those projects.

17. These shipbuilding programs involve ongoing construction, vendor payments, contract administration, labor costs, procurement obligations, and project-related financial tracking.

18. Because the Bank Accounts are tied to program-specific receipts, payment histories, contract-performance obligations, vendor disbursements, and financial tracking associated with the four shipbuilding programs, the Debtor cannot practically close, migrate, or replace such accounts without risking disruption to ongoing project administration, payment reconciliation, and operational continuity.

19. The Bank Accounts form an integral component of the Debtor's ordinary-course cash management practices.

20. Through the Bank Accounts, the Debtor receives deposits, processes payments, issues checks, conducts wire transfers, initiates ACH transactions, and disburses funds in connection with payroll, vendors, suppliers, contract administration, and other ordinary-course operational expenses.

21. Any interruption in the Debtor's ability to continue using the Bank Accounts would impair the Debtor's ability to efficiently manage active shipbuilding programs, maintain continuity of business operations, and preserve going-concern value.

5

22.     Continued use of the Bank Accounts preserves the Debtor's ability to administer contract-related cash flows, satisfy ordinary-course obligations, and maintain continuity of operations necessary to preserve the going-concern value of the estate.

23.     The Debtor seeks authority to continue using the Bank Accounts in the ordinary course of business pending completion of the underlying shipbuilding programs and thereafter in the ordinary course unless otherwise modified by further order of this Court.

## IV.     PATTERSON STATE BANK

24.     Patterson State Bank is the depository institution at which the Bank Accounts are maintained.

25.     Patterson State Bank is also a creditor of the Debtor and holds separate collateral rights with respect to certain assets of the Debtor, including a lien associated with the vessel known as the MV Risen Sun.

26.     By this Motion, however, the Debtor does not seek to alter, expand, impair, validate, avoid, or adjudicate any lien, security interest, right of setoff, or other creditor rights of Patterson State Bank.

27.     The relief requested herein is limited solely to authority for the Debtor to continue using the Bank Accounts in the ordinary course of business.

28.     Likewise, the Debtor requests authority for Patterson State Bank to continue servicing, administering, receiving, honoring, processing, and maintaining the Bank Accounts without interruption in the ordinary course.

## V.     BASIS FOR RELIEF

6

29. Bankruptcy courts routinely authorize chapter 11 debtors to continue using existing cash management systems and bank accounts where such systems are essential to preserving business continuity and maximizing estate value.

30. Section 1107(a) of the Bankruptcy Code authorizes a debtor-in-possession to operate its business subject to the rights and duties of a trustee.

31. Section 1108 permits the Debtor to continue operating its business.

32. Section 363(c)(1) permits a debtor-in-possession to use property of the estate in the ordinary course of business without separate notice and hearing.

33. Section 105(a) authorizes this Court to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code.

34. The continued use of the Bank Accounts is necessary and appropriate because: (a) the Bank Accounts are already integrated into the Debtor's ordinary-course financial operations and project-level accounting; (b) the accounts are directly tied to the receipt, administration, and disbursement of funds associated with the four shipbuilding programs; (c) closure, migration, or interruption of such accounts would create avoidable operational, administrative, and contract-performance disruption; and (d) continuity of account administration will preserve business operations, estate value, and efficient chapter 11 administration.

## VI. LIMITED NATURE OF RELIEF

35. The Debtor seeks only limited relief. Nothing in any order entered on this Motion shall: (a) enlarge Patterson State Bank's lien rights; (b) grant Patterson State Bank any additional security interest; (c) constitute approval of any right of setoff; (d) adjudicate lien validity, priority, or extent; or (e) waive any rights, claims, defenses, causes of action, or objections of the Debtor, the estate, or parties in interest.

**WHEREFORE**, the Debtor requests that this Court enter an order: (i) authorizing the Debtor to continue maintaining and using the three deposit accounts maintained at Patterson State Bank in the ordinary course of business; (ii) authorizing the Debtor to continue making deposits, issuing checks, initiating ACH transfers, conducting wire transfers, receiving funds, and making ordinary-course disbursements through such accounts; (iii) authorizing Patterson State Bank to continue servicing and administering the Bank Accounts in the ordinary course; (iv) providing that such relief shall not expand, validate, impair, or adjudicate any lien, setoff right, or other creditor rights of Patterson State Bank; and (v) granting such other relief as is just and proper.

Submitted by:

*/s/ Ryan J. Richmond*
**STERNBERG, NACCARI & WHITE, LLC**
Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Telephone:     (225) 412-3667
Facsimile:     (225) 286-3046
Email:          ryan@snw.law

*Attorneys for Swiftships, LLC*

8