| | |
|---|---|
| In re: | Case No. 26-50237 |
| SWIFTSHIPS, LLC,[1] | Chapter 11 |
| *Debtor-in-Possession*. | |

## DECLARATION OF SHEHRAZE SHAH

I, **Shahraze Shah**, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I.     INTRODUCTION AND AUTHORITY

1.      I am over the age of majority and competent to make this Declaration.

2.      I am the Manager of Swiftships, LLC (the "Debtor"). In that capacity, I oversee and am familiar with the Debtor's business operations, financial affairs, shipbuilding programs, cash management practices, bank accounts, vendor relationships, contract administration, and restructuring efforts.

3.      I submit this Declaration in support of: (a) the Debtor's Expedited Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral (the "Cash Collateral Motion") (ECF No. 12); and (b) the Debtor's Motion for Entry of an Order Authorizing the Debtor to Continue Using Certain Existing Deposit Accounts Maintained at Patterson State Bank (the "Bank Accounts Motion"). (ECF No. 80)

4.      Except where otherwise stated, I have personal knowledge of the matters set forth herein or have acquired such knowledge through my review of the Debtor's books, records,

---

[1] The last four digits of the Debtor's federal tax identification number are 8795. The Debtor's mailing address is 1105 Levee Road, Morgan City, LA 70380.

financial reports, and discussions with employees, advisors, and professionals working on behalf of the Debtor.

5.      If called as a witness, I could and would testify competently to the matters stated herein.

**II.      BACKGROUND OF SWIFTSHIPS**

6.      The Debtor is a Louisiana-based shipbuilder and maritime engineering company headquartered in St. Mary Parish, Louisiana.

7.      The Debtor has long operated in the design, construction, integration, repair, support, and delivery of civilian and military marine vessels.

8.      The Debtor's operations involve engineering, fabrication, procurement, labor-intensive construction, testing, training support, logistics, contract administration, and post-delivery support.

9.      The Debtor's business is capital intensive and depends on orderly cash administration, vendor relationships, skilled labor, materials procurement, and project-specific financial tracking.

**III.     NEED FOR CHAPTER 11 RELIEF**

10.     The Debtor filed this chapter 11 case to preserve and maximize estate value, maintain business continuity, and protect assets for the benefit of creditors and stakeholders.

11.     A significant factor leading to the filing was the Debtor's need to preserve equity in the vessel known as the MV Risen Sun.

12.     Prior to the Petition Date, collection and lien-enforcement activity threatened the Debtor's restructuring efforts and risked impairment of valuable estate assets.

13. Based upon my understanding of the Debtor's asset values and liabilities, I believe the Debtor has substantial equity in the MV Risen Sun, which should be preserved for the benefit of the bankruptcy estate and creditors.

14. Chapter 11 relief provides the Debtor an opportunity to continue operating as a going concern while pursuing restructuring efforts that may maximize value.

## IV. NEED TO USE CASH COLLATERAL

15. In the ordinary course of business, the Debtor requires access to cash and operating liquidity to continue functioning.

16. The Debtor must pay payroll, employee-related obligations, materials costs, vendors, subcontractors, utilities, insurance, rent, procurement expenses, taxes, and other ordinary-course operating obligations.

17. The Debtor also incurs necessary restructuring-related expenses, including legal, administrative, and professional costs.

18. Without authority to use cash collateral, the Debtor's operations would likely be materially disrupted and may cease.

19. Inability to use cash collateral would impair payroll, procurement, project performance, vendor obligations, and business continuity.

20. In my judgment, continued use of cash collateral is necessary to preserve going-concern value and avoid immediate harm to the estate.

## V. CASH FLOW / OPERATIONS

21. I have reviewed the Debtor's projected budget and anticipated operational cash flow.

22. Based upon present information, I believe the Debtor can continue operating while restructuring if it is authorized to use cash collateral consistent with the proposed budget and Court-approved parameters.

23. Continued operations preserve jobs, customer relationships, vessel-related obligations, and estate value.

24. A cessation of operations would significantly diminish the value of the Debtor's enterprise.

## VI. ADEQUATE PROTECTION / MV RISEN SUN

25. I understand the U.S. Small Business Administration asserts lien rights relating to, among other things, the Debtor's inventory, which may affect cash collateral and the MV Risen Sun.

26. I do not offer legal conclusions regarding lien validity, enforceability, priority, or extent.

27. Based upon my understanding of the vessel and its approximate value, I believe the MV Risen Sun provides significant value that may contribute to an equity cushion.

28. Continued operations and preservation of business value also help protect creditor interests.

## VII. PATTERSON STATE BANK ACCOUNTS

29. The Debtor maintains three deposit accounts at Patterson State Bank (the "Bank Accounts").

30. Each of the Bank Accounts is maintained solely in the Debtor's name.

31. These Bank Accounts form a core component of the Debtor's ordinary-course cash management system.

32.     Through these Bank Accounts, the Debtor receives deposits, administers project-related receipts, pays vendors, processes payroll-related disbursements, issues checks, initiates ACH transactions, conducts wire transfers, and manages ordinary-course business expenses.

33.     The Bank Accounts are used to administer estate funds and contract-related cash flows associated with the Debtor's shipbuilding operations.

## VIII.   SHIPBUILDING PROGRAMS TIED TO THE ACCOUNTS

34.     The Debtor's operations include four shipbuilding and maritime-related programs involving domestic defense, foreign military, and direct commercial vessel production efforts.

35.     These programs generate project-specific receipts, procurement obligations, vendor payments, labor costs, financial tracking requirements, and contract-performance obligations.

36.     The Bank Accounts are directly tied to the receipt, administration, reconciliation, segregation, and disbursement of funds associated with these programs.

37.     The four principal programs include:

a.     LCU 1700 Program;

b.     Expeditionary Littoral Craft (ELC) Program;

c.     28-Meter Coastal Patrol Craft (CPC) Kit Production Program (FMS); and

d.     28-Meter Coastal Patrol Craft (CPC) Kit Production Program (DCS).

38.     Certain programs remain active and ongoing.

39.     Other programs may involve unresolved financial, payment, administrative, reconciliation, or contract-related obligations.

40.     Continued access to the Bank Accounts is necessary for orderly administration of these programs.

## IX.   WHY THE ACCOUNTS MUST REMAIN OPEN

41. Because the Bank Accounts are tied to project-level accounting, contract-related receipts, vendor payment histories, procurement obligations, reconciliation functions, and operational tracking, the Debtor cannot practically close, migrate, or replace them without disruption.

42. Closure, migration, or interruption of these accounts could materially impair project administration, contract performance, vendor payments, operational continuity, and financial accountability.

43. Continued access to the Bank Accounts allows the Debtor to preserve continuity of operations and maintain accurate financial administration.

44. Continued use of the Bank Accounts avoids unnecessary administrative burden, expense, and disruption.

45. In my judgment, allowing continued use of these accounts is in the best interests of the Debtor, its estate, and creditors.

## X. LIMITED NATURE OF REQUESTED RELIEF

46. Patterson State Bank is the depository institution for the Bank Accounts.

47. I understand Patterson State Bank is also a creditor of the Debtor and has separate asserted collateral rights, including rights relating to the MV Risen Sun.

48. The Debtor's request is narrow because it seeks only authority to continue using the existing Bank Accounts in the ordinary course of business.

49. The Debtor is not seeking by these motions to expand, validate, impair, or adjudicate lien rights, setoff rights, or creditor rights.

## XI. CONCLUSION

50.     In my business judgment, authorization to use cash collateral and authorization to continue using the Patterson State Bank accounts are both necessary to preserve operations, protect going-concern value, maintain financial accountability, and maximize recovery for stakeholders.

51.     Without such relief, the Debtor may suffer immediate operational disruption, deterioration of enterprise value, and harm to restructuring efforts.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

**/s/ Shahraze Shah**
Shahraze Shah
Manager, Swiftships, LLC