**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

IN RE:                                                                    CASE NO.: 26-50237

SWIFTSHIPS, LLC[1]                                            CHAPTER 11

   Debtor.

**MOTION OF SUPREME INTEGRATED TECHNOLOGY, INC. FOR STAY RELIEF**
**AND RELATED RELIEF**

NOW INTO COURT, through undersigned counsel, comes Supreme Integrated Technology, Inc. ("SIT"), a creditor and party in possession of certain materials and equipment procured, manufactured, assembled, and/or stored in connection with prepetition purchase orders issued by Swiftships, LLC ("Swiftships" or the "Debtor"), who respectfully moves this Court for entry of an order granting stay relief and related relief pursuant to 11 U.S.C. §§ 105(a), 361, 362(d)(1), 363(e) and 503(b)(1)(A). In support, SIT respectfully represents as follows:

**I.        INTRODUCTION**

1.     SIT seeks stay relief to permit it to sell, use, redeploy, or otherwise dispose of winches currently in SIT's possession that were procured in connection with prepetition purchase orders issued by the Debtor for the LCU 1700 program. *See* the Declaration of Kevin Hayes submitted in support of this Motion (the "SIT Declaration"), ¶¶ 2 and 7-9, attached to this Motion as **Exhibit A**.

2.     SIT remains in possession of additional materials and equipment related to those purchase orders. *Id*. at ¶ 7. SIT has requested direction from the Debtor regarding the disposition, removal, inspection, preservation, use, sale, or abandonment of that equipment, but the

_____

[1] The last four digits of the Debtor's federal tax identification number are 8795. The Debtor's mailing address is 1105 Levee Road, Morgan City, LA 70380.

Debtor has not provided meaningful instruction, proposed a disposition protocol, removed the equipment, or agreed to pay ongoing storage and preservation costs. *Id*. at ¶¶ 12-14.

3. SIT now has a third-party client interested in the Subject Winches. Continued delay risks loss of that opportunity, additional storage expense, and further prejudice to SIT. *Id*. at ¶¶ 6, 10-11, and 16.

4. SIT is not asking the Court to finally adjudicate the parties' broader contractual relationship, ownership disputes, or claim allowance issues. SIT seeks only limited stay relief, to the extent applicable, to permit disposition of the Subject Winches while accounting for their value or proceeds. *Id*. at ¶ 15, Exhibit 1.

5. Alternatively, if the Debtor contends that the Subject Winches or other materials and equipment in SIT's possession are property of the estate and must continue to be preserved for the estate's benefit, SIT requests appropriate protection or compensation for the actual costs of storing and preserving that property.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including matters concerning administration of the estate, use of property and modification of the automatic stay.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief requested include 11 U.S.C. §§ 105(a), 361, 362(d)(1), 363(e) and 503(b)(1)(A).

## III. BACKGROUND

10. On March 18, 2026 (the "Petition Date"), Swiftships filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business

2

and manage its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. Thereafter, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") to represent the interests of the Debtor's unsecured creditor constituency in this Chapter 11 case.

11. Prior to the Petition Date, Swiftships issued purchase orders to SIT in connection with the LCU 1700 program, which refers to Swiftships' program for the construction of LCU 1700 boats 1 through 7 under Contract No. N00024-18-C-2401. The purchase orders issued to SIT in connection with that program included Purchase Order Nos. 5346/0016401-1, 5346-A/0016402-1, 5346-B/0016754-1, 5346-C/0016755-1, 5346-D/0016756-1, and 5346-E/0016757-1, together with related change orders. *Id*. at ¶ 2.

12. SIT performed substantial work in connection with those purchase orders, including design, engineering, manufacturing, assembly, procurement of materials and equipment, and storage of materials and equipment. *Id*. at ¶ 4. A list of the materials and equipment purchased, assembled, manufactured, delivered, stored, and/or otherwise addressed by SIT in connection with the purchase orders is attached as **Exhibit 1** to the SIT Declaration.

13. The total contract value of the purchase orders and change orders was $7,362,539.00.[2] *Id.* at ¶ 3.

14. SIT invoiced Swiftships $6,699,134.00 for work performed, services provided, and materials and equipment purchased or assembled in connection with the purchase orders. *Id.* at ¶ 4.

---

[2] The figures set forth herein reflect a reconciliation of SIT's records and supersede the aggregate amounts referenced in prior correspondence. The reconciliation identified a previously omitted invoice associated with the Bow Ramp Re-design change order. Because the change order was both invoiced and paid in full, inclusion of that invoice adjusts only the reported gross contract, invoicing, and payment totals and does not affect the outstanding balance owed by the Debtor. SIT's unpaid invoice balance therefore remains $1,127,899.00.

3

15. Swiftships paid SIT $5,571,235.00, leaving an unpaid invoice balance of $1,127,899.00. *Id*. at ¶ 5.

16. In addition to the unpaid invoice balance, SIT has incurred and continues to incur storage charges for materials and equipment held in connection with the purchase orders. SIT previously calculated storage charges at $148,000.00 through September 2025, based on $4,500.00 per month. Those charges have continued to accrue. *Id*. at ¶ 6.

17. On September 18, 2025, SIT provided the Debtor with a written response identifying the amounts owed, the storage charges, and the materials and equipment remaining in SIT's possession. SIT also requested direction regarding the disposition, delivery, destruction, use, reuse, resale, or disposal of the materials and equipment in its possession. SIT thereafter continued to communicate with the Debtor and/or the Debtor's counsel regarding the outstanding balance, ongoing storage obligations, and disposition of the materials and equipment, including correspondence dated May 1, 2026. Despite those efforts, the Debtor has not provided meaningful instruction, proposed a disposition protocol, removed the materials and equipment, or agreed to pay ongoing storage and preservation costs. *Id*. at ¶¶ 13-14.

18. SIT also provided Swiftships with a list of materials and equipment purchased, assembled, manufactured, delivered, stored, and/or otherwise addressed in connection with the purchase orders. *Id*. at ¶ 8, Exhibit 1.

19. The materials and equipment were identified generally as follows:

    a. **Category 1: Winches Delivered** – Winches delivered to Swiftships;

    b. **Category 2: Assembled Material Delivered** – Materials delivered to Swiftships fully assembled;

    c. **Category 3: Winches Not Delivered** – Winches still in SIT's possession;

4

d. **Category 4: Manufactured Material Not Delivered** – Manufactured materials still in SIT's possession;

e. **Category 5: Raw Material Not Delivered** – Raw materials still in SIT's possession; and

f. **Category 6: Scrapped Material** – Materials disposed of by SIT due to degradation over the lifetime of storage and space concerns after Swiftships failed to respond to SIT's requests relating to same. *Id.*

20. This Motion concerns, in part, winches currently in SIT's possession and listed among the undelivered winches. Specifically, SIT currently possesses ten (10) winches consisting of Bow Ramp Electric Winches (5346-7000) and Stern Anchor Winches (5346-7100) (collectively, the "Subject Winches"). The Subject Winches are among the materials and equipment identified in Exhibit 1 that remain in SIT's possession. The remaining materials and equipment identified in Exhibit 1 also remain in SIT's possession. *Id*. at ¶¶ 7-9 and Exhibit 1.

21. SIT has a third-party client interested in acquiring or using the Subject Winches for another active project. SIT believes the Subject Winches can be redeployed or otherwise monetized now, preserving value and mitigating damages. *Id*. at ¶¶ 10-11.

22. Prior to the Petition Date and thereafter, SIT has sought direction from the Debtor regarding the disposition, removal, inspection, preservation, use, sale, abandonment, or other treatment of all materials and equipment in SIT's possession. *Id*. at ¶¶ 12-14.

23. The Debtor has not provided meaningful instruction, has not proposed a disposition protocol, has not removed the materials and equipment, and has not agreed to pay ongoing storage and preservation costs. *Id*. at ¶ 14.

24. SIT continues to incur costs associated with storing and preserving the materials and equipment, including $4,500 a month is storage costs. *Id*. at ¶ 6. SIT should not be required

5

to indefinitely store and preserve materials and equipment at its own expense while also losing a current commercial opportunity to redeploy the Subject Winches. *Id*. at ¶¶ 11 and 15-16.

25. The Debtor has not identified any concrete need for SIT to continue storing the materials and equipment without payment, nor has it provided SIT with a proposal for adequate protection, insurance, removal, inspection, sale, abandonment, or other administration of the materials and equipment. *Id*. at ¶ 14.

26. SIT brings this Motion to obtain stay relief and related protection. SIT does not seek through this Motion a final adjudication of the parties' underlying contract claims, ownership disputes, setoff rights, recoupment rights, possessory rights, or other rights.

## IV. RELIEF REQUESTED

27. SIT requests stay relief to sell, use, redeploy, or otherwise dispose of the Subject Winches while accounting for, holding, or escrowing their value or proceeds pending further agreement or order of this Court. Alternatively, if stay relief is not granted, SIT requests that the Debtor be required to provide adequate protection or other appropriate relief, including actual storage and preservation costs, proof of insurance, and/or allowance of post-petition preservation costs as administrative expenses under 11 U.S.C. § 503(b)(1)(A).

## V. ARGUMENT

### A. Cause Exists to Grant Stay Relief Under 11 U.S.C. § 362(d)(1).

28. Section 362(a) generally stays acts to obtain possession of or exercise control over property of the estate, acts to create, perfect, or enforce liens against property of the estate, and acts to set off certain debts owing to the debtor. 11 U.S.C. § 362(a)(3), (a)(4), (a)(7).

6

29. SIT seeks stay relief out of an abundance of caution because the Debtor may contend that the Subject Winches or other materials and equipment in SIT's possession are property of the estate. As such, SIT is moving to lift the stay before using, redeploying, or otherwise disposing of the Subject Winches.

30. Section 362(d)(1) provides that, on request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).

31. "Cause" is not defined in the Bankruptcy Code. The absence of a statutory definition gives bankruptcy courts flexibility to determine whether cause exists based on the facts and circumstances of each case. *See Bonneville Power Admin. v. Mirant Corp.* (*In re Mirant Corp.*), 440 F.3d 238, 254 (5th Cir. 2006).

32. Cause exists here. SIT seeks stay relief because the Debtor has failed to provide direction, failed to remove or administer the equipment, failed to pay ongoing storage and preservation costs, and SIT has a present opportunity to redeploy or monetize the Subject Winches while preserving their value or proceeds pending further agreement or order of the Court. *Id*. at ¶¶ 10 and 12-15.

33. The automatic stay serves an important purpose by providing the debtor breathing room and preventing a disorderly scramble for estate property. *See In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005) ("Without the stay, creditors might scramble to obtain as much property of the debtor's limited estate as possible.").

34. SIT's requested relief is consistent with that purpose. SIT is seeking Court authority to preserve the value or proceeds of the Subject Winches through accounting, escrow, or other

26-50237 - #90  File 06/09/26  Enter 06/09/26 11:21:44  Main Document  Pg 7 of 12

Court-approved treatment, subject to later reconciliation and without prejudice to any party's rights.

35. SIT's request is also practical and value-preserving. SIT is owed $1,127,899.00 in unpaid invoice amounts and has incurred substantial storage costs that continue to accrue at $4,500.00 per month. *Id*. at ¶¶ 5-6.

36. SIT is not asking the Court to finally adjudicate those amounts in this Motion. Rather, those facts provide necessary context: SIT is not a volunteer warehouse for the estate, and the Debtor's silence is imposing real and continuing economic harm.

37. SIT has a present third-party opportunity involving the Subject Winches currently in SIT's possession. If the stay remains in place without direction or adequate protection, SIT faces the loss of that opportunity while continuing to store materials and equipment at its own expense. *Id*. at ¶¶ 10-11.

38. Continued imposition of the stay under these circumstances does not preserve value. It risks wasting value. The Subject Winches have current commercial utility. SIT has identified a present opportunity to use, sell, or redeploy them. Delay may cause the loss of that opportunity, resulting in reduced value and increased storage costs. *Id*. at ¶¶ 10-11 and 16.

39. By contrast, granting stay relief will not finally determine ownership or claim allowance and will not prejudice the estate. SIT can maintain records of the transaction and hold, escrow, or otherwise account for the value or proceeds pending further agreement or order of this Court. *Id*. at ¶ 15.

40. The Debtor has not identified any present need for SIT to continue storing the Subject Winches, has not proposed to pay for storage, has not requested inspection or removal, and

8

has not provided a concrete reorganization-related purpose for preventing SIT from monetizing or redeploying the Subject Winches while preserving their value. *Id*. at ¶¶ 12-14.

41. To the extent the Debtor contends that the Subject Winches are necessary to an effective reorganization, the Debtor should be required to make that showing. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs*., 484 U.S. 365, 375–76 (1988) (property is necessary to an effective reorganization only if there is "a reasonable possibility of a successful reorganization within a reasonable time").

42. At this time, continued delay serves no bankruptcy purpose. Cause exists to grant stay relief under 11 U.S.C. § 362(d)(1) so that SIT may sell, use, redeploy, or otherwise dispose of the Subject Winches and preserve or account for the value or proceeds pending further order of the Court.

**B.    Alternatively, If the Debtor Contends the Equipment Is Estate Property, the Debtor Must Pay the Costs of Preserving It.**

43. In the alternative, if the Court does not grant stay relief and the Debtor contends that the Subject Winches or other materials and equipment in SIT's possession constitute property of the estate, the Debtor should be required to provide appropriate protection and compensation for the continued storage and preservation of that property.

44. SIT does not concede that the Subject Winches or other undelivered materials and equipment are property of the estate. SIT asserts ownership, possessory, contractual, and other interests in the Subject Winches and related materials and equipment. But if the Debtor claims those assets belong to the estate and must remain preserved pending further administration of this Chapter 11 case, the Debtor cannot require SIT to warehouse and preserve them indefinitely at SIT's expense.

9

45. SIT seeks stay relief to preserve value and mitigate its continuing damages. If stay relief is denied and the Debtor contends that the Subject Winches or other equipment must remain preserved for the estate's benefit, SIT seeks payment of the actual storage and preservation costs necessary to maintain that equipment.

46. SIT also seeks allowance and payment of any post-petition storage and preservation costs incurred for the benefit of the estate as actual and necessary costs of preserving the estate under 11 U.S.C. § 503(b)(1)(A).

47. Adequate protection and preservation-cost relief should not be limited to the Subject Winches. The Subject Winches are the immediate issue because SIT has a present third-party opportunity. *Id*. at ¶¶ 10-11. But the broader issue is that SIT continues to store and preserve additional materials and equipment for which the Debtor has provided no direction and no payment. *Id*. at ¶¶ 12-14.

48. If the Debtor claims an estate interest in those materials and equipment, SIT should not be forced to serve as an uncompensated warehouse for the estate. SIT should be required to provide, among other things, the following:

   a. monthly storage and preservation payments;

   b. proof of insurance covering the materials and equipment while in SIT's possession;

   c. reimbursement of reasonable handling and preservation costs;

   d. a protocol for inspection, removal, sale, abandonment, or other disposition; and

   e. a deadline for the Debtor to administer, remove, or abandon the materials and equipment.

49. SIT's storage costs $4,500.00 per month. Those charges continue to accrue. *Id.* at ¶ 6.

50. Accordingly, if stay relief is not granted, SIT respectfully requests that the Court require the Debtor to provide appropriate protection and compensation for the Subject Winches

and all other materials and equipment in SIT's possession, including actual storage and preservation costs, proof of insurance, and a prompt protocol for inspection, removal, sale, abandonment, or other disposition.

**C.     The Requested Relief Preserves Value and Avoids Premature Adjudication of the Broader Dispute.**

51.     SIT is not seeking a final ruling on claim allowance, ownership, setoff, recoupment, possessory rights, or the parties' broader contractual disputes.

52.     The requested relief is practical. It allows commercially useful winches to be monetized or redeployed now, while preserving the value or proceeds for later allocation.

53.     This approach protects all parties. SIT avoids losing a current commercial opportunity and avoids continued uncompensated storage. The Debtor preserves any argument it may have to the value or proceeds. The estate is not harmed because the value can be tracked, escrowed, or otherwise preserved.

54.     The alternative, forcing SIT to warehouse equipment indefinitely while the Debtor remains silent — creates cost, delay, and waste.

WHEREFORE, Supreme Integrated Technology, Inc. respectfully requests that this Court enter an order: (a) granting stay relief, to the extent applicable, to permit SIT to sell, use, redeploy, or otherwise dispose of the Subject Winches; (b) authorizing SIT to maintain records and to account for, hold, or escrow the net proceeds or value of the Subject Winches pending further agreement of the parties or further order of this Court; (c) providing that any sale, use, redeployment, or other disposition of the Subject Winches shall be without prejudice to the rights, claims, defenses, ownership arguments, possessory rights, setoff rights, recoupment rights, administrative expense claims, or other rights of SIT, the Debtor, and all parties in interest; (d) alternatively, if stay relief is not granted, requiring the Debtor to provide appropriate protection or

compensation for the Subject Winches, including payment of actual storage and preservation costs, or allowance and payment of such post-petition costs as administrative expenses under 11 U.S.C. § 503(b)(1)(A); (e) requiring the Debtor, to the extent it contends that the other materials and equipment in SIT's possession are property of the estate, to provide appropriate protection or compensation for such materials and equipment, including payment of actual storage and preservation costs, proof of insurance, or allowance and payment of such post-petition costs as administrative expenses under 11 U.S.C. § 503(b)(1)(A); and (f) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**KREBS FARLEY, PLLC**

*/s/Laura F. Ashley*
Laura F. Ashley (La. Bar No. 32820)
Elliot Scharfenberg (La. Bar No. 35304)
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582
Email: lashley@krebsfarley.com
escharfenberg@krebsfarley.com
*Attorneys for Supreme Integrated Technology, Inc.*

12