# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

In re:                                          Case No. 26-50237

SWIFTSHIPS, LLC,[1]                             Chapter 11

    *Debtor-in-Possession*.

---

**EXPEDITED MOTION FOR ORDER AUTHORIZING PAYMENT OF CERTAIN PRE-PETITION OBLIGATION OF WESCO GAS & WELDING SUPPLY INC. AS A CRITICAL VENDORS**

---

**NOW INTO COURT**, through undersigned counsel, comes Swiftships, LLC (the "Debtor") (the "Debtor"), who moves for the entry of an order authorizing the payment of WESCO Gas & Welding Supply Inc. ("Wesco") as a certain critical vendor. In support, the Debtor represents:

### Jurisdiction and Venue

1.      The Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested herein is 11 U.S.C. §§ 105(a), 363, 1107, and 1108.

2.      The relief requested herein is authorized by 11 U.S.C. §§ 105(a), 363, 503(b), 1107(a) and 1108 and FED. R. BANKR. P. 6003.

3.      On Wednesday, March 18, 2026 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor intends to manage its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

---

[1] The last four digits of the Debtor's federal tax identification number are 8795. The Debtor's mailing address is 1105 Levee Road, Morgan City, LA 70380.

4. The Debtor is a Louisiana limited liability company headquartered in St. Mary Parish, Louisiana.

5. The Debtor is engaged in the business of shipbuilding and marine manufacturing. In the ordinary course of its business, the Debtor designs, constructs, repairs, and services both civilian and military vessels. Its operations involve long-term construction contracts, substantial vendor coordination, payroll obligations, materials procurement, and project-specific cash administration.

### The Debtor's Critical Vendor

6. Wesco provides industrial gas products and related cylinder rental services that are essential to the Debtor's ongoing manufacturing operations. The products supplied by Wesco include, but are not limited to, Argon, Nitrogen, Oxygen, and other industrial gases used in welding, cutting, fabrication, assembly, and testing activities. These gases are integral to the construction and repair of aluminum and steel marine vessels and related components. For example, Argon gas is required for aluminum welding operations, which are a critical part of the Debtor's vessel manufacturing process. Without a continuous supply of these gases and the associated cylinders necessary for storage and distribution, the Debtor would be unable to perform key fabrication and assembly functions required to fulfill customer contracts and maintain normal business operations. Wesco has been a long-standing supplier of these products and services, and the Debtor relies upon Wesco's cylinders and gas inventory to support daily production activities. The products provided by Wesco are not readily replaceable on short notice without causing significant operational disruption.

7. The removal of Wesco's cylinders or the cessation of gas deliveries would have an immediate and severe impact on the Debtor's operations. Many of the Debtor's manufacturing and fabrication activities depend upon the continuous availability of industrial gases. In particular, aluminum welding operations cannot be performed without Argon gas, and several other

fabrication processes require Oxygen, Nitrogen, and related gas products. Wesco has already demonstrated its willingness to remove cylinders.

8. Wesco dispatched a truck to the Debtor's facility and removed approximately half of the cylinders that had been provided to support operations. Following negotiations, the parties reached an interim arrangement under which the Debtor agreed to immediately pay all post-petition amounts due, while Wesco agreed to defer collection of the prepetition balance pending Court approval of payment at the earliest opportunity.

9. However, Wesco has advised that if payment of the prepetition balance is ultimately not approved or otherwise resolved, it reserves the right to remove the remaining cylinders from the Debtor's facility and discontinue service. The removal of the remaining cylinders would effectively halt critical manufacturing activities that depend upon these gases. If Wesco were to remove the remaining cylinders or discontinue service, production activities would likely stop until an alternative supplier could be identified, approved, and mobilized. Such a transition could take a significant amount of time due to supplier qualification requirements, equipment availability, delivery schedules, and operational logistics.

10. As a result, the Debtor would face substantial production delays, interruptions to ongoing projects, potential workforce inefficiencies, missed contractual milestones, customer dissatisfaction, and possible loss of revenue. Delays in manufacturing could also expose the Debtor to contractual claims, liquidated damages provisions, or other adverse consequences under customer agreements. Given the critical nature of the gas supply to daily operations, the inability to obtain these products would materially impair the Debtor's ability to continue operating as a going concern.

3

11.     Wesco has been a long-standing supplier of these products and services and such a transition could take a significant amount of time due to supplier qualification requirements, equipment availability, delivery schedules, and operational logistics. Secondly, due to Chapter 11 filling, majority of suppliers are reluctant to work with the Debtor.

12.     Communications regarding the outstanding prepetition balance and continued service have primarily occurred through telephone conversations between Debtor personnel and representatives of Wesco. Although we have internal email correspondence specifically threatening to discontinue service or remove equipment, Wesco's actions demonstrate its position regarding the outstanding balance.

13.     Wesco recently sent a truck to the Debtor's facility and removed approximately half of the gas cylinders that were being used in the Debtor's operations. This action was taken in connection with discussions regarding the outstanding account balance. Following negotiations, Wesco agreed to leave the remaining cylinders in place based upon the Debtor's commitment to immediately pay all post-petition obligations and seek Court approval for payment of the prepetition balance at the earliest opportunity. The communications leading to these actions primarily occurred through telephone conversations rather than written correspondence. However, the physical removal of a substantial portion of the cylinders evidences Wesco's willingness to reduce or discontinue support if the outstanding balance issue is not satisfactorily resolved. The Debtor is willing to contact Wesco and request written confirmation of its position regarding continued service, cylinder retention, and the consequences of non-payment of the prepetition balance.

14.     A breakdown of the outstanding balance, including invoice dates, invoice numbers, and amounts, identifying which invoices are prepetition and which are post-petition.

4

### WESCO GAS & WELDING SUPPLY INC.  Statement 31-May-26

| Date | P. O. # | INVOICE | Amount | Project | Remarks |
|---|---|---|---|---|---|
| 10/31/2025 | Oct-25 | 2001679734 | 2,823.18 | PRO51102-01 | Demurrage Cylender Rental 10/01/25 - 10/31/25 |
| 11/30/2025 | Nov-25 | 2001690042 | 2,782.03 | PRO51102-01 | Demurrage Cylender Rental 11/01/25 - 11/30/25 |
| 11/30/2025 | Nov-25 | 2001688261 | 109.14 | PRO51102-01 | Finance Charges |
| 12/24/2025 | PO-30329 | 2001697215 | 1,259.91 | PRO51102-01 | PO-30329 |
| 12/31/2025 | Dec-25 | 2001700668 | 2,816.68 | PRO51102-01 | Demurrage Cylender Rental 12/01/25 - 12/31/25 |
| 12/31/2025 | Dec-25 | 2001698884 | 44.53 | PRO51102-01 | Finance Charges |
| 1/15/2026 | 30329 | 2001704871 | 362.00 | PRO51102-01 | PO-30329 |
| 1/31/2026 | Jan-26 | 2001712439 | 2,472.80 | PRO51102-01 | Demurrage Cylender Rental 01/01/26 - 01/31/26 |
| 1/31/2026 | Jan-26 | 2001710665 | 92.05 | PRO51102-01 | Finance Charges |
| 2/28/2026 | Feb-26 | 2001723951 | 2,121.31 | PRO51102-01 | Demurrage Cylender Rental 02/01/26 - 02/28/26 |
| 2/28/2026 | Feb-26 | 2001722188 | 136.18 | PRO51102-01 | Finance Charges |
| **Pre-petition Balance** | | | **15,019.81** | | |
| 3/31/2026 | Mar-26 | 2001737268 | 2,137.93 | PRO51102-01 | Demurrage Cylender Rental 03/01/26 - 03/31/26 |
| 3/31/2026 | Mar-26 | 2001735529 | 189.95 | PRO51102-01 | Finance Charges |
| 4/30/2026 | Apr-26 | 2001749127 | 1,981.83 | PRO51102-01 | Demurrage Cylender Rental 04/01/26 - 04/30/26 |
| 4/30/2026 | Apr-26 | 2001747438 | 216.56 | PRO51102-01 | Finance Charges |
| 5/31/2026 | May-26 | 2001760557 | 2,045.53 | PRO51102-01 | Demurrage Cylender Rental 05/01/26 - 05/31/26 |
| 5/31/2026 | May-26 | 2001758812 | $257.43 | PRO51102-01 | Finance Charges |
| **Post Petitin Balance** | | | **6,829.23** | | |
| | Total Balance | | 21,849.04 | | |

### **Relief Requested**

15.     The Debtor requests that the Court enter an order authorizing the Debtor to pay Wesco as a critical vendor as set forth herein. The Debtor believes that failure to pay the pre-petition amount will cause irreparable harm to its estate. While the Debtor understands that the requested relief may be disfavored, in this instance the Debtor believes, in the exercise of its business judgment, that payment towards the pre-petition amounts owed to Wesco is critical to the viability of its business and, therefore, the Court should authorize the Debtor to pay Wesco's pre-petition claim to avoid irreparable harm to its estate.

<u>**Basis for Relief Requested**</u>

16.      To protect against diminution in the value of a debtor's estate and going-concern enterprise, bankruptcy courts commonly authorize the payment of prepetition obligations in advance of a confirmed chapter 11 plan. Courts have relied on several legal theories, rooted in 11 U.S.C. §§ 1107(a), 1108, 363(b), and 105(a) in authorizing such payments. Each of these theories supports the entry of an order authorizing the payment of the prepetition amounts owed to Critical Vendors.

*Authority Exists to Support the Payment of Wesco's Pre-Petition Claim*

17.      The payment of Wesco's pre-petition claim is also supported by the facts of this case and applicable law. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of Section 105(a) is to assure the bankruptcy courts power to take actions that are necessary or appropriate in aid of the exercise of its jurisdiction.

18.      To invoke the equitable powers of Section 105(a), the Court must first rely on a specific provision of the Bankruptcy Code in support of the relief requested in the motion. *In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1334 (5th Cir. 1993); *In re CoServe, L.L.C.*, 273 B.R. 487, 495 (Bankr. N.D. Tex. 2002). As explained in *CoServ*, the nexus is 11 U.S.C. §§ 1107 and 1108.

19.      Pursuant to sections 1107(a) and 1108, a debtor-in-possession is a fiduciary acting "to protect and preserve the estate, including an operating business's going-concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497). Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *CoServ*, 273 B.R. at 497.

20. Courts have consistently held that, under certain circumstances, a debtor may pay certain prepetition claims in the performance of the debtor's fiduciary duty where necessary or appropriate to preserve or enhance the value of the debtor's estate for all creditors. *See Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of […] [crucial] business relations"); *CoServ*, 273 B.R. at 497 (noting that "it is only logical that the bankruptcy court be able to use section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate").

21. To assist in determining when paying a prepetition debt should be considered an exercise of a debtor's fiduciary duty, courts have developed the "Doctrine of Necessity" (also referred to as the "necessity of Payment Rule"). *CoServ*, 273 B.R. 491-93. The Doctrine of Necessity doctrine generally provides that a debtor may only pay such prepetition claims of vendors who are critical to the debtor's reorganization. In *CoServ*, the court established a three-prong test for determining whether a preplan payment on account of a prepetition claim was valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate of the debtor's going concern value, which is disproportionate to the amount of claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other by payment of the claim.

*CoServ*, 273 B.R. at 498.

22. Payment to Wesco's pre-petition claim easily meets all three prongs of the test. As explained above, Wesco is practically the only vendor that can provide the Debtor with gases used in welding, cutting, fabrication, assembly and testing activities. Accordingly, it is essential, critical, and necessary that the Debtor continue to deal with Wesco. To not deal with Wesco would lead to

the failure and conversion of this chapter 11 case because the Debtor would be unable to serve its customers. Furthermore, it is necessary to pay Wesco the pre-petition amount requested because otherwise it may not provide goods and services to the Debtor. For the reasons stated, there are no practical or legal alternatives to deal with Wesco other than payment toward its pre-petition claim.

### *Section 363(b) of the Bankruptcy Code and a Sound Business Justification*

23.     Consistent with the debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under § 363(b)(1) of the Bankruptcy Code where a sound business purpose exists for doing so. *See* 11 U.S.C. § 363(b)(1). *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (sound business justification existed to justify payment of prepetition wages). *See also In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (Bankr. S.D.N.Y. 1983) (relying on Section 363, the court allowed a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Ionosphere Clubs*, 98 B.R. at 175.

24.     The Debtor seeks the requested relief to maintain its operations during this difficult time. To not deal with Wesco would lead to the immediate failure of the Debtor's operations because the Debtor would be unable to perform daily shipbuilding functions. The Debtor seeks authority to pay such amounts only to the extent necessary to ensure the continued provision of post-petition goods and services in the ordinary course of business. Therefore, the Debtor respectfully requests that the Court grant its request.

### **Waiver of Bankruptcy Rules 6003, 6004(a) and (6004(h)**

25.     Pursuant to Bankruptcy Rule 6003(b), "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the

Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm[.]" FED. R. BANKR. P. 6003(b). For the reasons described herein, the Debtor submits that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate. To implement the foregoing successfully, the Debtor seeks a waiver of the requirements under Bankruptcy Rule 6004, including the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Reservation of Rights

26.     Nothing contained herein is intended or should be construed as an approval or assumption of any agreement or contract under Section 365 of the Bankruptcy Code.

**WHEREFORE**, the Debtor requests the entry of an order granting the relief requested herein and granting such other relief as just and proper.

Submitted by:

*/s/ Ryan J. Richmond*
**STERNBERG, NACCARI & WHITE, LLC**
Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Telephone:     (225) 412-3667
Facsimile:     (225) 286-3046
E-Mail:        ryan@snw.law

*Attorneys for Swiftships, LLC*