IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: | Case No. 26-50237 |
| SWIFTSHIPS, LLC,[1] | Chapter 11 |
| *Debtor-in-Possession*. | |

### DEBTOR'S EXPEDITED MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING AND GRANTING RELATED RELIEF

**NOW INTO COURT**, through undersigned counsel, comes Swiftships, LLC (the "Debtor"), who submits this motion (this "Motion") seeking approval of post-petition debtor-in-possession financing. In support, the Debtor represents:

#### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Western District of Louisiana (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this Chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's federal tax identification number are 8795. The Debtor's mailing address is 1105 Levee Road, Morgan City, LA 70380.

3. The bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the Western District of Louisiana (the "Local Rules").

### RELIEF REQUESTED

4. The Debtor seeks entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and a final order (the "Final Order" and, together with the Interim Order, the "DIP Orders")[2] granting the following relief:[3]

- *DIP Facility*: Authorizing the Debtor to obtain post-petition financing (the "DIP Financing") pursuant to a $600,000.00 unsecured debtor-in-possession term loan credit facility (the "DIP Facility"), by and among the borrower thereto, the guarantors thereto, ICS Nett Inc.[4] (the "DIP Lender") effective upon the entry of the Interim Order.

- *Administrative Expenses*: DIP Lender does not seek any liens in connection with the DIP Facility. Rather, it only requests a subordinate administrative expense claim pursuant to section 503(b)(1) of the Bankruptcy Code.

- *Automatic Stay*: Modifying the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and conditions of the DIP Orders.

- *Final Hearing*: Scheduling a hearing (the "Final Hearing") to consider final approval of this motion.

---

[2] The Debtor will file the form of Final Order prior to the Final Hearing.

[3] The summaries contained in this motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this motion is inconsistent with such documents, the terms of the applicable documents shall control.

[4] The DIP Lender is an insider and affiliate of the Debtor.

2

5. On March 18, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since that time the Debtor has continued to operate and manage its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6. The Debtor is engaged in the business of shipbuilding and marine manufacturing. In the ordinary course of its business, the Debtor designs, constructs, repairs, and services both civilian and military vessels. Its operations involve long-term construction contracts, substantial vendor coordination, payroll obligations, materials procurement, and project-specific cash administration.

7. The Debtor's operations include four shipbuilding and maritime-related programs involving domestic defense, foreign military, and direct commercial vessel production efforts. Collectively, these programs generate contract-related receipts, vendor obligations, procurement costs, labor expenses, and performance-related disbursements that are administered through the Debtor's existing cash management system.

8. The Debtor requires authority to obtain post-petition financing under 11 U.S.C. § 364(b) to provide a payroll backstop while it completes its existing shipbuilding programs. The Debtor's workforce is its most critical operational asset, and the loss of skilled employees due to payroll interruptions would substantially impair its ability to perform under existing contracts, diminish the value of the estate, and jeopardize the successful completion and delivery of vessels currently under

3

construction. The requested financing will provide the liquidity necessary to ensure uninterrupted payroll obligations during this critical period, preserve the Debtor's going-concern value, and maximize recoveries for creditors by enabling the Debtor to fulfill its contractual commitments. Accordingly, the proposed financing represents a sound exercise of the Debtor's business judgment and is in the best interests of the estate and all parties in interest.

### CONCISE STATEMENT OF SUMMARY PURSUANT TO BANKRUPTCY RULE 4001

9. In accordance with Bankruptcy Rules 4001(b), 4001(c), and 4001(d), the following chart contains a concise statement and summary of the proposed material terms of the DIP Facility as provided in the DIP Documents and the DIP Orders:[5]

| Provision | Summary of Material Terms |
| --- | --- |
| DIP Lender | ICS Nett Inc |
| Borrower | Swiftships, LLC, the debtor |
| Collateral | None |
| Guarantors | None |
| Purpose | To provide Debtor in Possession (DIP) financing to be used as follows:<br><br>• Primarily to backstop payroll.<br>• Fund operations. |
| Amount | Six Hundred Thousand And 00/100 Dollars ($600,000.00)[6] |
| Interest Rate | 2.91% per annum |
| Origination Fee | None |

---

[5] This summary is intended only to assist the Court by reference to the DIP Credit Agreement and the DIP Orders, and is qualified in its entirety by the terms of the DIP Documents, each as may be modified by the DIP Orders.

[6] The Debtor does not intend to borrow the entire $600,000. The Debtor has included a buffer in this amount in case the expected DIU or DCS Egypt milestone payments get delayed.

| | |
|---|---|
| Processing Fee | None |
| Lien Position | None |
| Closing Costs | None |

**GROUNDS FOR RELIEF**

**A. The Debtor should be authorized to obtain post-petition financing on a senior secured and superpriority basis.**

10. The Debtor has met the requirements for relief under section 364 of the Bankruptcy Code, which permits a debtor to obtain post-petition financing and, in return, to grant superpriority administrative status and liens on its property. Specifically, section 364(b) of the Bankruptcy Code provides, "The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense."

11. In determining whether the Debtor has exercised sound business judgment in deciding to enter into the DIP Facility, the Court may take into consideration non-economic benefits to the Debtor offered by a proposed post-petition facility. For example, in *In re ION Media Networks, Inc.*, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009), the Bankruptcy Court for the Southern District of New York explained that "noneconomic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization" may be properly considered by debtors when selecting post-petition financing, because the "business decision to obtain credit from a particular lender is

5

almost never based purely on economic terms" due to the importance of those terms. *Id.*

12.     Here, given all the facts and circumstances present in this Chapter 11 case, the Debtor has amply satisfied the necessary conditions under section 364(b) of the Bankruptcy Code for authority to enter into the DIP Facility. The Debtor exercised proper business judgment in securing the DIP Facility on terms that are fair and reasonable, as well as the only and the best available to them under the circumstances. The Debtor has not identified any potential lenders willing to provide a post-petition financing on an unsecured or junior secured basis. For all the reasons discussed further below, the Debtor respectfully submits that the Court should grant this request to enter into the DIP Facility pursuant to section 364(b) of the Bankruptcy Code.

13.     Based on the facts and circumstances of this Chapter 11 case, the DIP Facility represents a proper exercise of the Debtor's business judgment. As noted above, bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including decisions about whether and how to borrow money. See, e.g., *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity") (citation omitted); *In re Metaldyne Corp.*, 409 B.R. 661, 667–68 (Bankr. S.D.N.Y. 2009) (noting "decisions in [the Southern District of New York] emphasizing that [bankruptcy courts] should not substitute [their] business judgment for that of the Debtors'") (citations omitted), *aff'd* 421 B.R. 620 (S.D.N.Y.

6

2009); *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40 ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); *see also In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011) (noting that the business judgment standard in the context of section 363 of the Bankruptcy Code "is flexible and encourages discretion").

14. Specifically, when evaluating whether a debtor's decision to obtain post-petition financing was an exercise of sound business judgment, courts need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Dura Auto. Sys., Inc.*, 2007 WL 7728109, at \*97 (Bankr. D. Del. Aug. 15, 2007) (quoting *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006)). When evaluating whether a debtor's decision to enter into post-petition financing was an exercise of sound business judgment, bankruptcy courts consider the terms of the financing in light of the debtor's circumstances and the market for financing more generally. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization).

15. The Debtor proposes to obtain financing under the DIP Facility by providing a subordinate administrative expense claim pursuant to section 364(b) of

7

the Bankruptcy Code. The administrative expense claim would be subordinate to quarterly U.S. Trustee fees and any allowed professional fee claims.

16. Here, the Debtor does not believe that comparable alternative sources of financing are reasonably available given the realities imposed by the Debtor's existing capital structure. Although the Debtor solicited financing proposals from potential new, third-party capital providers, these efforts were unsuccessful. Consequently, the Debtor's only option was to pursue good faith, arm's-length negotiations with DIP Lender regarding the terms of the DIP Facility and broader restructuring. Through these negotiations, the Debtor obtained the economic and other terms of the DIP Facility, and believes it is the best financing proposal reasonably available under the circumstances.

17. The Debtor has a fiduciary duty to protect and maximize its estate's assets. See *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004). The Debtor seeks access to the DIP Facility consistent with that duty. Without access to the DIP Facility, the Debtor would be unable to fund critical payments that are essential to the Debtor's operational and restructuring viability.

18. In considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. See *In re Farmland Indus., Inc.*, 294 B.R. at 886; see also *In re Ellingsen MacLean Oil Co.*, 65 B.R. at 365. The appropriateness of a proposed financing facility should also be considered in light of current market conditions.

8

19. The terms of the DIP Facility were actively negotiated by the Debtor, with the assistance of their advisors. Under the current facts and circumstances of this Chapter 11 case, the pricing, fees, and other economics provided for in the DIP Facility, taken as a whole, provide the only financing option presently available for the Debtor. Moreover, the terms of the DIP Facility are fair, appropriate, reasonable, adequate under the circumstances, and in the best interests of the Debtor, its estate, and its creditors. The proposed DIP Facility is the first step of the Debtor's proposed restructuring, without which the Debtor would not be able to implement the proposed value-maximizing prepackaged restructuring.

**B. The DIP Lender should be deemed a good faith lender under section 364(e).**

20. Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right to any lien securing those loans, even if the authority of the debtor to obtain such loans or to grant such liens is later reversed or modified on appeal. Section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

21. Here, the Debtor believes the DIP Facility embodies the most favorable terms on which the Debtor could obtain post-petition financing. The negotiations of the terms of the DIP Facility with the DIP Lender was conducted at arm's length.

9

Under the circumstances, the terms and conditions of the DIP Facility are reasonable, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code, in accordance with the DIP Order. Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and that the DIP Lender is entitled to all of the protections afforded by that section.

**C.      Failure to obtain immediate interim access to the DIP Facility would cause immediate and irreparable harm.**

22.      Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral on an interim basis to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. See FED. R. BANKR. P. 4001(b)(2) and 4001(c)(2). Furthermore, section 363(c)(3) of the Bankruptcy Code authorizes the Court to conduct a preliminary hearing and to authorize the use of cash collateral on an interim basis "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

23.      The Debtor will be unable to continue as a going concern if it does not obtain interim approval of the DIP Facility, which would cause immediate and

irreparable harm to the Debtor and its stakeholders by dramatically diminishing the value of the Debtor's estate.

24. Furthermore, the Debtor requires access to additional liquidity provided under the DIP Facility to stabilize its operations, meet working capital and business operating needs, fund the administration of this Chapter 11 case, provide long-term stability and confidence for the Debtor's stakeholders, and quickly emerge from this Chapter 11 case.

25. Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an expedited hearing on this Motion, and enter the Interim Order authorizing the Debtor to obtain credit under the DIP Facility, all on an interim basis, pending approval on a final basis after the Final Hearing (if necessary).

### WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

26. The Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies the requirements of Bankruptcy Rule 6004(a) and that the Debtor have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h). As described above, the relief that the Debtor seeks in this motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate through this chapter 11 case.

**WHEREFORE**, the Debtor requests that the Court enter the DIP Orders substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

11

Dated:       July 14, 2026       Respectfully Submitted:

*/s/ Ryan J. Richmond*
**STERNBERG, NACCARI &**
**WHITE, LLC**
Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Telephone:  (225) 412-3667
Facsimile:  (225) 286-3046
Email:     ryan@snw.law

*Attorneys for Swiftships, LLC*