# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| SWIFTSHIPS, LLC | § | Case No. 26-50237 |
| | § | |
| Debtor. | § | |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S EXPEDITED MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING AND GRANTING RELATED RELIEF**

**Relates to Dkt. No. 117**

**NOW INTO COURT,** through undersigned counsel, comes the Official Committee of Unsecured Creditors (the "***Committee***") appointed in the above-captioned chapter 11 case of Swiftships, LLC (the "***Debtor***"), and files this limited objection and reservation of rights (this "***Limited Objection***") to the Debtor's *Expedited Motion for Interim and Final Orders Authorizing the Debtor to Obtain Postpetition Financing and Granting Related Relief* [Dkt. No. 117] (the "***Motion***"). In support hereof, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Committee does not oppose the Debtor's access to needed liquidity. The Committee defers to the Debtor's business judgment regarding the need for liquidity insofar as the purported need for cash is intended to facilitate a successful reorganization that benefits unsecured creditors. The Committee continues to investigate the Debtor's need for cash (including the payment of an inflated payroll) versus the return on cash and future prospects for the Debtor to successfully reorganize. As regards the proposed funding, the Committee acknowledges that the economic terms of the proposed $600,000.00 unsecured facility (the "***DIP Facility***")—no liens, no fees, a 2.91% interest rate, and an administrative expense claim subordinate to quarterly U.S.

1

Trustee fees and allowed professional fee claims—are, on their face, favorable to the estate.

2. The Committee nevertheless files this Limited Objection to raise two issues that should be addressed in any interim or final order approving the Motion (the "***DIP Orders***"): *first*, no administrative expense claim should be allowed on a retroactive or *nunc pro tunc* basis for any funds advanced by ICS Nett Inc. (the "***DIP Lender***") before entry of the applicable DIP Order; and *second*, approval of the DIP Facility should be conditioned upon the Debtor's filing of a budget governing the use of the DIP proceeds, together with reasonable variance and reporting protections for the Committee. These issues are of particular importance here because, as the Motion discloses, the DIP Lender is an insider and affiliate of the Debtor. *See* Motion ¶ 4 n.4.

<strong>LIMITED OBJECTION</strong>

**A. No Administrative Expense Claim Should Be Allowed for Advances Made Before Entry of the Applicable DIP Order.**

3. Section 364(b) of the Bankruptcy Code authorizes a debtor to incur unsecured debt allowable as an administrative expense under section 503(b)(1) only "after notice and a hearing." 11 U.S.C. § 364(b). The statute, of course, contemplates a prospective court authorization preceding the extension of credit.

4. Courts in this circuit and others recognize that *nunc pro tunc* approval of post-petition financing is only available in "rare" or "extraordinary" circumstances. *In re Ward*, 546 B.R. 667, 680 (Bankr. N.D. Tex. 2016) (citing *Sherman v. Harbin (In re Harbin)*, 486 F.3d 510, 532 (9th Cir.2007)).

5. In *Ward*, Judge Jernigan identified the paradigm case in which *nunc pro tunc* approval of post-petition financing might be appropriate: "an unsophisticated, honest, non-insider creditor may loan money to a debtor without notice, or actual knowledge, of the bankruptcy case. In such an instance, the creditor's due process rights may be implicated. In this type of

2

circumstance, consideration of a nunc pro tunc authorization ... may be appropriate." *Ward*, 546 B.R. at 679 (quoting *In re Grand Valley Sport & Marine, Inc.,* 143 B.R. 840 (Bankr. W.D. Mich. 1992)). :

6.  The explicit use of the term "non-insider" in this formulation reflects that an insider lender — by definition someone with a close relationship to the debtor — cannot credibly claim ignorance of the bankruptcy case. Thus, the very characteristic that might justify *nunc pro tunc* relief (lack of knowledge of the bankruptcy) is categorically unavailable to an insider.

7.  So while credit extended to a debtor-in-possession without prior court authorization is not entitled to administrative expense treatment as of right, and retroactive validation of unauthorized postpetition credit is <u>*disfavored*</u>, it is particularly impermissible as applied to an insider lender. *See In re Am. Cooler Co.*, 125 F.2d 496, 497 (2d Cir. 1942) (retroactive approval appropriate only where the court is confident it would have authorized the borrowing had timely application been made); *cf. In re Texlon Corp.*, 596 F.2d 1092, 1098–99 (2d Cir. 1979) (disapproving financing accommodations granted without adequate notice and opportunity for scrutiny).

8.  Accordingly, to the extent the DIP Lender has advanced[1], or hereafter advances, any funds to the Debtor prior to entry of the Interim Order (or, with respect to amounts in excess of any interim authorization, prior to entry of the Final Order), such advances should not receive an administrative expense claim, whether under section 503(b)(1), section 364(b), or otherwise, and no provision of the DIP Orders should be construed to grant administrative priority to any such pre-authorization advances on a retroactive basis.

---

[1]   The Committee notes that it is unclear whether the Debtor has already received post petition funding from the DIP Lender. The most recent budget offered by the Debtor indicates that the DIP Lender was forecast to provide up to $400,0000 in funding before the first week of June. *See* Budget attached as <u>Exhibit A</u>. It is now July and all indications are that the DIP Lender may have advanced funds prior to filing the Motion.

3

9.      The Committee therefore requests that the DIP Orders expressly provide that (i) the administrative expense claim granted thereunder attaches only to advances made under the DIP Facility on or after entry of the applicable DIP Order and in accordance with its terms, and (ii) nothing in the DIP Orders allows, ratifies, or grants priority to any advance made by the DIP Lender or any affiliate prior to such entry, with all parties' rights with respect to any such prior advances expressly reserved.

**B.      Approval Should Be Conditioned on a Budget and Reasonable Reporting to the Committee.**

10.      The Motion describes the purpose of the DIP Facility only in general terms — "primarily to backstop payroll" and to "fund operations"— and no budget is attached to the Motion or the proposed Interim Order.  A budget is a customary and essential feature of postpetition financing, and it is especially warranted where the lender is an insider and the stated need is premised on the possible delay of specific milestone payments.  The most recent budget offered by the Debtor was a proposed thirteen week budget ending in the first week of July.  *See* Exhibit A.

11.      The Committee accordingly requests that approval of the DIP Facility be conditioned upon the following: (i) prior to or contemporaneously with entry of the Interim Order, the Debtor shall file and serve a budget, in reasonable line-item detail and covering at least a thirteen-week period, reflecting all anticipated receipts and disbursements and the anticipated timing and use of draws under the DIP Facility; (ii) proceeds of the DIP Facility shall be used only in accordance with the budget, subject to a reasonable permitted variance; (iii) the Debtor shall provide the Committee's counsel with budget-to-actual variance reporting on no less than a bi-weekly basis; and (iv) an updated budget shall be filed in advance of the Final Hearing.

4

**RESERVATION OF RIGHTS**

12. The Committee reserves all rights with respect to the Motion, the DIP Facility, the DIP Orders, and any related agreements or documents, including the right to raise further objections at the Final Hearing, to object to the allowance or priority of any claim asserted by the DIP Lender, and to investigate and pursue any claims or causes of action of the estate. The Committee further requests that the DIP Orders preserve, as stated in the Motion, the subordination of the DIP Lender's administrative expense claim to quarterly U.S. Trustee fees and all allowed professional fee claims.

**WHEREFORE,** the Committee respectfully requests that the Court condition any approval of the Motion on the modifications described herein, and grant the Committee such other and further relief as is just and proper.

Dated: July 20, 2026.

**Respectfully submitted:**

**KELLY HART PITRE**

_/s/ Rick M. Shelby_
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Rick M. Shelby (LA #31963)
Amelia L. Hurt (LA #36817)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: rick.shelby@kellyhart.com
amelia.hurt@kellyhart.com

_**Counsel for the Official Committee of Unsecured Creditors of Swiftships, LLC**_