IN RE:

SWIFTSHIPS, LLC                                    CASE NO. 26-50237
    Debtor                                    CHAPTER 11

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTOR'S EXPEDITED MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING AND GRANTING RELATED RELIEF**

COMES NOW Kevin M. Epstein, United States Trustee for Region 5 (the "U.S. Trustee"), and submits this limited objection to Debtor Swiftships, LLC's Expedited Motion for Interim and Final Orders Authorizing the Debtor to Obtain Postpetition Financing and Granting Related Relief ECF No. 117, and states as follows:

## I.      Preliminary Statement

1.      While the U.S. Trustee does not oppose the Debtor obtaining necessary liquidity for payroll and maritime manufacturing, the Debtor has failed to legally justify granting administrative priority status to its corporate affiliate, ICS Nett Inc. (the "Affiliate Lender"), under 11 U.S.C. §§ 364(b) or 503(b)(1). While the Motion attempts to frame this request as an exercise of sound "business judgment," the arrangement involves an insider and is subject to rigorous judicial scrutiny rather than a deferential standard.

2.      The U.S. Trustee's review of the Debtor's pre-petition bank records and historical Monthly Operating Reports ("MORs") reveals an extensive, unmapped history of multi-million dollar intercompany transactions between the Debtor and the Affiliate Lender. These historically loose, informal capital infusions lacked baseline commercial lending protections, distinct interest rates, or structured debt-service schedules. Because the Affiliate Lender has an inherent equity-

1

holder interest in preserving the Debtor's going-concern value, and has historically extended funding on an informal, unsecured basis, the Debtor cannot carry its statutory burden under 11 U.S.C. § 364(b) to show that the administrative priority designation is a mandatory inducement.

## II.      Background

1.      On March 18, 2026, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      On July 14, 2026, nearly four months into the administration of this case, the Debtor filed the instant Motion seeking approval of a $600,000.00 post-petition loan from its corporate Affiliate Lender.

3.      The summary terms of the proposed loan indicate that the Affiliate Lender is not seeking liens or collateral.[1] Instead, the Debtor requests that the insider be granted a subordinate administrative expense claim pursuant to section 503(b)(1) of the Bankruptcy Code.

4.      Historically, the Affiliate Lender has regularly provided operating loans to the Debtor on an unsecured, non-priority basis. These pre-petition insider loans carried no strict principal repayment schedules or restrictive covenants; the Debtor's only obligation was to pay accrued interest at the end of each calendar year.

---

[1] The U.S. Trustee notes that the Motion currently contains inconsistent requests:

- Page 2, Bullet 1 (Relief Requested): Requests an "unsecured" debtor-in-possession facility.
- Page 2, Bullet 2 (Administrative Expenses): Explicitly states the "DIP Lender does not seek any liens" and requests a subordinate administrative expense claim instead.
- Page 4 Table (Concise Summary): Specifies "None" for both the Collateral and Lien Position rows.
- Page 5, Section A Heading: Contradicts the above sections by requesting authorization for financing on a "senior secured and superpriority basis."
- Page 5, Paragraph 10: States the Debtor met the requirements to grant superpriority status and liens, but immediately follows this by quoting section 364(b) regarding "unsecured credit or to incur unsecured debt."

Because the text under Section A returns to discussing unsecured credit under § 364(b), these conflicting requests for both secured and unsecured relief appear to be inadvertent. The undersigned reached out to counsel for the Debtor to clarify the legal status of the loan to no avail.

### III.    Legal Standard

**A.    Insider DIP Financing Transactions are Subject to Heightened Judicial Scrutiny and Entire Fairness Rather than Deferential Business Judgment Review.**

5.    Under 11 U.S.C. § 364(b), a debtor may obtain unsecured credit allowable as an administrative expense only if the credit is obtained in the ordinary course of business, or upon a showing that such terms are necessary to induce the lender to extend credit. Courts apply heightened scrutiny to insider transactions to ensure they are fair, reasonable, and necessary. A permissive "business judgment" standard is not appropriate for review of transactions between a debtor and an insider of the debtor. *In re Latam Airlines Group S.A.*, 620 B.R. 722, 769 (Bankr. S.D.N.Y. 2020) (holding that business judgment rule is inapplicable to DIP financing between a debtor and an insider). Such transactions are inherently suspect because "they are rife with the possibility of abuse." *Id.* (citing *In re Bidermann Indus. U.S.A. Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997); *see also C & J Clark Am., Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*, 92 B.R. 87, 93 (Bankr. S.D.N.Y. 1988)).

6.    Instead, courts apply a "heightened scrutiny" test in assessing the bona fides of a transaction among a debtor and an insider of the debtor. *In re Latam Airlines Group S.A.*, 620 B.R. at 769; *see also Pepper v. Litton*, 308 U.S. 295, 306 (1939) (noting that a controlling shareholder's "dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder to not only prove the good faith of the transaction but also to show its inherent fairness . . . ."); *Fabricators Inc. v. Tech. Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1465 (5th Cir. 1991) ("A claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts."); *In re L.A. Dodgers LLC*, 457 B.R. at 313 (applying "entire

3

fairness" standard in lieu of business judgment rule to financing transaction where principal stood to personally benefit).

7. Here, because the arrangement involves an insider and it is subject to rigorous judicial scrutiny rather than a deferential "business judgment" standard.

**B.** **The Debtor's Extensive History of Undisclosed, Informal Intercompany Transfers Disproves the Need for Specialized Post-Petition Lending Protections**.

8. The U.S. Trustee's review of the Debtor's pre-petition bank records reveals an extensive, unmapped history of intercompany transactions. Specifically, over the two years preceding the petition date, the Debtor regularly transferred millions of dollars to the Affiliate Lender for unspecified corporate transfers, centralized cash management pooling, and alleged expense reimbursements, as detailed below:

9. Multi-Year Transfer Log between the Affiliate Lender and Swiftships PNC Bank Accounts.

| Year | Direction | Total Volume | Total Transactions |
|------|-----------|--------------|--------------------|
| 2024 | Incoming (To Swiftships) | $2,510,025.00 | 66 Transactions |
| 2024 | Outgoing (From Swiftships) | $3,353,500.00 | 12 Transactions |
| 2025 | Incoming (To Swiftships) | $4,438,000.00 | 61 Transactions |
| 2025 | Outgoing (From Swiftships) | $3,590,450.00 | 8 Transactions |
| 2026 | Incoming (To Swiftships) | $530,700.00 | 19 Transactions |
| 2026 | Outgoing (From Swiftships) | $0.00 | 0 Transactions |

10. Multi-Year Transfer Log Between the Affiliate Lender and Swiftships Patterson State Bank Accounts:

| Year | Direction | Total Volume | Total Transactions |
|------|-----------|--------------|--------------------|
| 2024 | Incoming (To Swiftships) | $2,060,000.00 | 13 Transactions |
| 2024 | Outgoing (From Swiftships) | $1,205,900.00 | 48 Transactions |
| 2025 | Incoming (To Swiftships) | $560,000.00 | 11 Transactions |
| 2025 | Outgoing (From Swiftships) | $2,187,304.00 | 98 Transactions |
| 2026 | Incoming (To Swiftships) | $1,656,975.00 | 13 Transactions |

4

2026 Outgoing (From Swiftships) $1,530,932.39 23 Transactions

11. A review of the transaction records across March, April, and May 2026 Monthly Operating Reports ("MORs") shows that the Affiliate Lender transferred funds a total of 10 times post-petition before the Debtor received $1.5 million payment from the U.S. Department of Defense as follows:

| Date | Destination Account | Amount |
|---|---|---|
| 03/20/2026 | Patterson Operating -0401 | $4,500.00 |
| 03/24/2026 | Patterson Operating -0401 | $765.00 |
| 04/03/2026 | Patterson Operating -0401 | $2,500.00 |
| 04/07/2026 | Patterson Operating -0401 | $25.00 |
| 04/07/2026 | Patterson Operating -0401 | $8,000.00 |
| 04/16/2026 | Patterson Operating -0401 | $32,000.00 |
| 04/16/2026 | Patterson Operating -0401 | $60,000.00 |
| 04/16/2026 | Patterson Operating -0401 | $70,000.00 |

12. The Debtor's bank account statements demonstrate that the Affiliate Lender has historically acted as a flexible capital source, regularly providing operating cash to the Debtor on an unsecured, non-priority basis. Yet, the Debtor's Motion fails to disclose these extensive pre- and post-petition intercompany cash transfers, or the terms governing them. In fact, Amer Sayeed testified during the Debtor's Rule 2004 examination that these transfers lacked baseline commercial lending protections, distinct interest rates, or structured debt-service schedules. Instead, the historical arrangement merely required the Debtor to calculate and pay accrued interest on a unified, net intercompany position at the close of each calendar year.

13. While paragraph 16 of the Motion notes that third-party solicitation efforts were unsuccessful, it frames the insider arrangement as a "good faith, arm's-length deal" representing the best available proposal under the circumstances. The Motion, however, completely fails to

establish the statutory "inducement" showing required under § 364 to justify higher-priority or secured debt.[2]

14.     Furthermore, the Affiliate Lender has an inherent equity-holder interest in preserving the Debtor's going-concern value to maximize its own long-term recovery.[3] Particularly, pursuant to the May 2026 MOR (June MOR is delinquent), the Debtor currently owes $34,642,137.00 to its affiliates. (ECF No. 107 at 17). The itemized breakdown from the Long-Term Liabilities section of the Debtor's In-House Balance Sheet is as follows: i) Loan Payable, Affiliate: $17,836,550.00; ii) Due to Affiliates: $16,805,587.00. (ECF No. 107 at 17). The exact amount owed to ICS Nett remains unclear because the monthly operating reports do not itemize balances by affiliate.

15.     Given this historical funding relationship, the Affiliate Lender has demonstrated a willingness to provide post-petition liquidity under its historical terms—requiring only an annual interest payment—without demanding administrative priority status. Consequently, the formal credit parameters requested in the Motion are fundamentally inconsistent with the historical reality of the parties' financial relationship. As the insider would fund the estate without special status, the Debtor cannot carry its burden of proof to show that the requested administrative priority designation is a mandatory inducement.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order: i.

---

[2] Given these unmapped cash transactions, it is entirely unclear what is actually owed, to whom it is owed, and whether a true debtor-creditor relationship even exists.

[3] Pursuant to the Monthly Operating Report filed in May 2026, the Debtor currently owes $34,642,137.00 to its affiliates The itemized breakdown from the Long-Term Liabilities section of the Debtor's In-House Balance Sheet is as follows: i) Loan Payable, Affiliate: $17,836,550.00; ii) Due to Affiliates: $16,805,587.00. The exact amount owed to ICS Nett remains unclear because the monthly operating reports do not itemize balances by affiliate. (ECF No. 107 at 17).

6

denying the Debtor's Motion [ECF No. 117] in its entirety; or, ii. In the alternative, conditioning any post-petition borrowing from ICS Nett Inc. upon the historical, informal terms of the parties' relationship—specifically, on a non-priority, unsecured basis requiring only a year-end interest reconciliation, with no administrative expense elevation under 11 U.S.C. § 503(b)(1); and iii). granting such other and further relief as this Court deems just and proper.

<div style="margin-left: 45%;">

Kevin M. Epstein

United States Trustee
Region 5, Judicial Districts
of Louisiana and Mississippi

By:    /s/ *Anna Haugen*
        Anna Haugen

</div>

Anna Haugen, FL Bar No. 89555
Trial Attorney, Office of the U.S. Trustee
300 Fannin Street, Suite 3196
Shreveport, LA 71101
Anna.Haugen@usdoj.gov
Telephone No. (318) 676-3456
Direct Telephone No. (318) 676-3554

IN RE:

  SWIFTSHIPS, LLC            CASE NO. 26-50237
    Debtor               CHAPTER 11

## **CERTIFICATE OF SERVICE**

   I certify that a copy of the above and foregoing ORDER has been either mailed by first class mail, postage prepaid, or transmitted by CM/ECF to the following:

Swiftships, LLC
1105 Levee Road
Morgan City, LA 70380-1001

Ryan James Richmond
Sternberg, Naccari & White, LLC
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801

Emile Joseph, Jr.
Allen & Gooch, A Law Corporation
P.O. Box 81129
Lafayette, Louisiana 70598

Benjamin W. Janke
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170

Carli M. Worsham
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170

Duris L. Holmes
DEUTSCH KERRIGAN, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130

Ryan W. Lamb
U.S. Department of Justice
P.O. Box 875-Ben Franklin Station
Washington, DC 20044

Joseph E. "Josh" Lee III (Bar #26968)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130

Claire A. Campbell (Bar #41181)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130

PATRICK K. RESO
HENRI S. THERIOT
CHEHARDY, SHERMAN, WILLIAMS,
RECILE & HAYES, L.L.P.
111 North Oak Street, Suite 200
Hammond, Louisiana 70401

Seth B. Shapiro
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC 20044-0875

Rick M. Shelby
KELLY HART PITRE
400 Poydras Street, Suite 1812
New Orleans, LA 70130

Amelia L. Hurt
KELLY HART PITRE
400 Poydras Street, Suite 1812
New Orleans, LA 70130

Louis M. Phillips
KELLY HART PITRE
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916

KREBS FARLEY, PLLC
Laura F. Ashley
400 Poydras Street, Suite 2500
New Orleans, LA 70130

KREBS FARLEY, PLLC
Elliot Scharfenberg
400 Poydras Street, Suite 2500
New Orleans, LA 70130

Charles M. Rush, APLC
202 Magnate Drive
Lafayette, LA 70508

Date:   July 20, 2026                    By:   */s/Jennifer J. Moore*
                                               Jennifer J. Moore
                                               Paralegal Specialist
                                               Office of the United States Trustee
                                               300 Fannin Street, Suite 3196
                                               Shreveport, LA 71101
                                               Telephone No. (318) 676-3456
                                               Direct Telephone No. (318) 676-3483