UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

| | |
|---|---|
| SWIFTSHIPS, LLC | CASE NO. 26-50237 |
| Debtor | CHAPTER 11 |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO FIRST INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND EXPENSES**

COMES NOW Kevin M. Epstein, United States Trustee for Region 5 (the "U.S. Trustee"), and submits this limited objection to Debtor Swiftships, LLC's First Interim Application for Allowance of Compensation and Expenses ("Application") (ECF No. 135), and states as follows:

## I. Preliminary Statement

1. While the U.S. Trustee acknowledges that Sternberg, Naccari & White, LLC, ("Counsel for the Debtor") rendered necessary services during this chapter 11 proceeding, a review of the itemized invoice (Exhibit A) reveals billing practices that do not comply with 11 U.S.C. § 330, Federal Rule of Bankruptcy Procedure 2016, and established Fifth Circuit standards. Specifically, the invoice reflects improper billing for routine administrative or clerical tasks at full professional rates, excessive time allocations for non-working travel services, and opaque, lumped-sum mailing expenses that obscure underlying metrics and conflict with third-party vendor service disclosures. Because these practices create an inaccurate record and impose an unauthorized overhead burden on the bankruptcy estate, the U.S. Trustee respectfully requests a downward adjustment of the requested professional fee award by $1,422.50 and a temporary disallowance or stay of $4,866.59 unverified mailing reimbursements.

## II. Background

2. On March 18, 2026, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (ECF No. 1). On August 20, 2026, Counsel for the Debtor filed its

Application seeking an award of $30,027.50 in attorney's fees and $4,866.59 in expenses, totaling $34,894.09 for the period from March 18, 2026, through July 31, 2026. (ECF No. 135).

## III. Legal Standard

i. Statutory Predicate

3. Bankruptcy Code section 330(a)(1) provides that:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, […] an examiner, […] or a professional person employed under section 327 or 11103
> –
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, […] professional person, or attorney, and by any paraprofessional personal employed by any such person; and (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

4. Section 330(a) also gives the bankruptcy court the authority, upon motion or sua sponte, to "award compensation that is less than the amount of compensation that is requested." *Id*. at § 330(a)(2); *In re Babcock & Wilcox Co.*, No. 06-9964, 2007 WL 854304, at * (Bankr. E.D. La. March 15, 2007). Section 330(a)(3) provides an illustrative (but not exclusive) list of factors in determining reasonable compensation, including:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* at § 330(a)(3).

5. Further, bankruptcy courts "shall not allow compensation for unnecessary duplication of services […] or […] services that were not […] reasonably likely to benefit the debtor's estate […] or [… ] necessary to the administration of the estate[.]" 11 U.S.C. § 330(a)(4). Overall, the court has wide discretion in awarding fees. In *In re U.S. Golf Corp.*, 639 F.2d 1197 (5th Cir. 1981), the court explained:

> We have long recognized the importance of the bankruptcy judge's closeness to issues raised in an application for attorneys fees; the bankruptcy judge has not only presided over the evidentiary hearing, but has also had the opportunity to observe the performance of the attorney throughout his employment before the bankruptcy court.

*Id*. at 1201.

6. The applicant bears the burden of proof for its claim of compensation. *Id.* at 1207 (5th Cir. 1981). The burden must not be taken lightly, "since every dollar received by the applicant results in one dollar less for creditors, justification for compensation is a necessity." *In re Evangeline Refining Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989) (citing *In re Hotel Assoc*., 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981).

ii. Lodestar

7. In the Fifth Circuit, the determination of a reasonable attorney's fee award involves a two-step process. *See Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). The Court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *Hensley v. Eckerhart*,

461 U.S. 424, 433 (1983). This "lodestar" method serves as the initial estimate of a reasonable attorney's fee. *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

8. The second step involves the application of twelve factors the Fifth Circuit applies in determining what amount is warranted. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of money involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Once the lodestar is computed by multiplying the reasonable number of hours by a reasonable hourly rate, the Court may adjust the lodestar upward or downward depending on its analysis of the twelve factors espoused in *Johnson*. *Dodge v Hunt Petroleum Corp.*, 174 F.Supp.2d 505, 508 (N.D. Tex. 2001).

9. Considering the *Johnson* factors, the Court may reduce the award resulting from the lodestar calculation if the documentation of hours worked is inadequate or if the calculation includes hours that were not "reasonably expended." *See Hensley*, 461 U.S. at 433-34. However, to the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

iii. Other Considerations

10. A fee applicant should exercise 'billing judgment' and "make a good-faith effort

to exclude from a fee request [the] hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court is charged with an independent review of the reasonableness of an applicant's billing practices. *See In re Tak Commc'ns, Inc.*, 154 B.R. 514, 516 (Bankr. W.D. Wis. 1993) (*citing In re Bonneville Pacific Corp.*, 147 Bankr. 803, 805 (Bankr D. Utah 1992) ("The ultimate determination that all requirements of the statute have been met rests with the Court").

## IV. Argument

### A. Clerical and Administrative Tasks Billed at Professional Rates

11. The Application improperly requests administrative priority compensation for routine clerical tasks—that constitute non-billable operational overhead. Seeking a professional billing rate for routine administrative functions shifts the firm's standard business overhead onto the bankruptcy estate, unfairly penalizing creditors. In *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) the Fifth Circuit established the rule that clerical work is not compensable. *Id.* ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical.") (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) ("Such expenses are separately recoverable only as part of a prevailing party's award for attorney's fees and expenses, and even then only to the extent that the paralegal performs work traditionally done by an attorney. Otherwise, paralegal expenses are separately unrecoverable overhead expenses.")); *Missouri v. Jenkins ex rel. Agyei,* 491 U.S. 274, 288 n. 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); Alto-Shaam, Inc. v. Manitowoc Company, Case No. 09-cv-018-O, 20212 WL 12978015 (N.D. Tex. Feb. 2 2012) (citing *Allen v. U.S. Steel Corp. and* reducing the total fees requested by 5% because "the charges [were] for purely clerical work—such as 'filing,' 'calendar scheduling,' 'retriev[ing],'

'print[ing],' 'saving,' 'mailing,' 'downloading.'"); *In re Garza*, Case No. 16-70444, 2020 WL 718444, at *4 (Bankr. S.D. Tex. Feb. 12, 2020) (citing *Vela v. City of Houston* and disallowing paralegal fees for, *inter alia*, serving orders, filing certificate of service, gathering and printing documents); *In re Mata*, Case No. 16-33808, 2020 WL 6370347, at *9-10 (disallowing fees for billing numerous clerical tasks) (Bankr. S.D. Tex. Oct. 29 at 2020).

12. Counsel for the Debtor routinely billed the estate at $125.00/hour for clerical chores performed by professional "AV." These entries must be disallowed:

- 04/10/2026 (AV): "Mailed out Notice of Claims Bar Dates" (2.02 hours — $252.50)
- 04/21/2026 (AV): "Printed and Mailed out Response to OSC..." (2.06 hours — $257.50)
- 05/26/2026 (AV): "Printed and Mailed Out PSB Motion..." (2.50 hours — $312.50).
- 06/15/2026 (AV): Two separate repetitive entries for printing and sending the Felterman application totaling 2.08 hours ($260.00).

(ECF No. 135 at 11, 12, 14).

13. The U.S. Trustee also notes that on these dates, Counsel for the Debtor billed hourly professional fees to handle and mail documents while simultaneously charging the estate out-of-pocket costs for the underlying printing and postage of those exact same materials:

- The April 10, 2026 Mailing (Notice of Bar Dates): Applicant billed 2.02 hours of professional time via "AV" ($252.50) to process the mailing, while simultaneously charging the estate $91.02 for postage and $98.40 for printing copies.

- The May 26, 2026 Mailing (PSB Motion): Applicant billed 2.50 hours of professional time via "AV" ($312.50) to mail the motion, while simultaneously charging $167.89 for postage and $293.40 for printing copies.

- The June 15, 2026 Mailing (Felterman Application): Applicant billed 2.08 hours across two repetitive entries via "AV" ($260.00) to mail out the application, while simultaneously charging $168.92 for postage and $262.40 for printing copies.

(ECF. No. 135 at 17, 18).

14. Mailing and printing documents are standard secretarial/clerical duties. Billed at $125.00/hour, these tasks improperly drained $1,082.50 from the estate for routine office work.

### B. Excessive Billing for Travel Time in Violation of Local Rules and USTP Guidelines

15. The United States Trustee Program (USTP) Guidelines explicitly require that professional travel time be billed at a one-half (1/2) hourly rate unless active legal work is simultaneously being performed during transit.[1] Pursuant to the Local Bankruptcy Rule 2016-1(b)(8) for the Western District of Louisiana, an application for compensation and reimbursement of expenses must "comply with the United States Trustee guidelines as set forth in 28 CFR Part 58, Appendix A (for cases in which total assets and total liabilities are less than $50 million, aggregated for jointly administered cases) [www.justice.gov/ust/fee-guidelines] . . . ."

16. Because the national guidelines allow for local variation, the 5th U.S. Circuit Court of Appeals established a firm precedent holding that bankruptcy courts do not abuse their discretion when they cut requested travel fees in half. *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (affirming the reduction of counsel's travel time compensation to a half-rate absent proof that comparably skilled local practitioners billed travel at full hourly rates). In addition, Local Bankruptcy Rule 2016-1(b)(11) provides that an application for compensation and reimbursement of expenses must "bill travel time at half-rate unless work was performed during travel."

17. Counsel for the Debtor acknowledged the governing nature of this restriction by correctly billing subsequent travel on 04/14/2026, 06/30/2026 and 07/21/2026 at the 1/2 rate.

---

[1] The statement regarding non-working travel originates from the official national guidelines promulgated by the Executive Office for United States Trustees under the Department of Justice. The explicit restriction on charging full hourly rates for travel time is found in the United States Trustee Fee Guidelines (codified at 28 C.F.R. Part 58, Appendix B). Under Section 4 ("Review Criteria Utilized by the United States Trustee"), subsection (k) "Non-working travel," the guidelines state:

> *"The United States Trustee may object if the applicant seeks compensation at a professional's full rate for time spent traveling without actively working on the bankruptcy case or while working on other unrelated matters."*

(ECF No. 135 at 11). However, Applicant improperly failed to apply this mandatory cap to the opening phase of the case:

- 03/24/2026 (RR): Travel: Travel to and from Lafayette for first day hearings. — 1.70 hours at $400.00/hr = $680.00
- 04/14/2026 (RR): Travel: Travel to and from Lafayette for hearings. Total travel time 2.24 hours. Billed at 1/2 rate. — 1.20 hours at $400.00/hr = $480.00
- 06/30/2026 (RR): Travel: Travel to and from Lafayette for multiple hearings. Total travel time 3.6 hours. Billed at 1/2 rate. — 1.80 hours at $400.00/hr = $720.00
- 07/21/2026 (RR): Travel: Travel to and from Lafayette for emergency hearings. Total travel time 2.6 hours. Billed at 1/2 rate. — 1.30 hours at $400.00/hr = $520.00

(ECF No. 135 at 11, 16, 17).

18. Because no active legal service is documented during this transit, billing this entry at a full professional rate directly violates LBR 2016-1 and *Babcock & Wilcox*. The March 24 entry must be reduced by 50% ($340.00) to align with the mandatory half-rate restriction.

### C. Opaque Lump-Sum Mailing Disclosures Fail to Itemize Metrics and Create an Irreconcilable Disclosure Conflict Regarding Third-Party Vendors

19. At the outset, the U.S. Trustee must note that the Application indicates that the law firm is serving the notices itself, explicitly attributing every single service and mailing entry directly to its own internal personnel under the initials "AV" or "LF" and seeks an award of $4,866.59 in total expenses as follows:

- 03/18/2026 (LF): Cost of serving Ex Parte Application to Employ, Ex Parte Motion to Set Claims Bar Dates, Ex Parte Motion to Extend Deadlines, Expedited Motion to Continue Utilities, Expedited Motion to Compensate Employees, Expedited Motion to Interim Professional Compensation Procedures, Expedited Motion for Authority to Use Cash Collateral, Motion for Expedited Consideration — $1,606.16
- 04/10/2026 (AV): Postage to mail out Notice of Claims Bar Dates and Order Setting Claims Bar Dates to List of Creditors — $91.02
- 04/21/2026 (AV): Postage to mail out Response to OSC to list of creditors — $106.56
- 05/26/2026 (AV): Postage to mail out PSB Motion, Notice of Hearing, and Declaration of Shah to list of creditors — $167.89
- 06/15/2026 (AV): Postage to mail out Application to Employ Felterman and Notice of Hearing to list of creditors — $168.92
- 06/22/2026 (LF): Cost of serving Expedited Motion to Pay Critical Vendor, Ex Parte Motion to Attend Hearing Remotely, Ex Parte Motion to Expedite Hearing — $915.98

- 07/14/2026 (LF): Cost of serving Motion to Extend Exclusivity, Motion to Obtain Post-Petition Financing, Motion for Expedited Consideration — $984.39

(ECF No. 135 at 17-18).

20. However, a review of corresponding Certificates of Service filed on the docket reveals that at least two other outside corporate notice providers actually executed the mailings:

a. The Certificates of Service filed on March 18, 2026, and July 14, 2026, declare under penalty of perjury that Counsel for the Debtor utilized Stretto as a purported "Approved Bankruptcy Notice Provider"

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document (s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 3/18/2026

Melissa Membrino
c/o Stretto
410 Exchange Ste 100
Irvine, CA 92602
(949) 222-1212
declaration@stretto.com

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document (s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 7/14/2026

Melissa Membrino
c/o Stretto
410 Exchange Ste 100
Irvine, CA 92602
(949) 222-1212
declaration@stretto.com

(*see* ECF No. 17 at p. 2; ECF No. 119 at p. 2). The Court has made no determination that the use and cost of employing Stretto for mailings services is reasonable in this case, and no invoices have been provided to establish the basis of those costs.

b. The Certificate of Service filed on June 22, 2026, reveals that Applicant similarly utilized an outside vendor named BK Attorney Services, LLC

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 6/22/2026

Victoria Blake
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Ryan J. Richmond
Sternberg, Naccari & White, LLC
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801

(*see* ECF No. 103 at p. 2). Likewise, no invoices have been provided for BK Attorney Services, LLC, showing exactly what services were provided and at what cost.

21. Compliant applications in this District should transparently disclose the identity of their third-party notice vendors, isolate direct pass-through costs without markup, attach invoices and verify that physical mailings were strictly limited to instances mandated by the Bankruptcy Rules (*see, e.g., In re Pipeline Construction*, Case No. 25-50760, ECF No. 299 at p. 26, 177-79 detailing direct pass-through payments to Falcon Document Solutions, L.P. for matrix service and attaching invoices).

22. The U.S. Trustee submits that if the application indicates that internal law firm personnel ("LF") managed the mailings when an outside corporate noticing entity was actually utilized, the issue extends beyond a basic omission of detail to a formal disclosure conflict under bankruptcy rules. Bankruptcy Rule 2016 requires a complete disclosure of the particulars regarding any compensation or expense arrangement. Categorizing an expense as an internal law firm cost when it stems from a third-party corporate invoice creates an inaccurate record for the Court, the United States Trustee, and creditors.

23. In addition, the Application improperly lumps separate expense items into a single flat-fee entry without presenting a clear, auditable formula (e.g. number of creditors x unit postage rate). For instance, the March 18, 2026 entry groups the service costs of eight separate, substantive motions into a single charge of $1,606.16. (ECF No. 135 at 17). By recording a generic "Quantity" of "1.00" and placing the entire total of $1,606.16 into the "Rate" column, the Applicant completely obscures the necessary underlying metrics, such as the exact number of recipients or the per-unit postage costs. Furthermore, because this substantial fee is attributed internally to "LF" (Law Firm) rather than an explicit third-party vendor, the lack of an accompanying invoice or itemized verification log creates an impermissible transparency deficit, preventing the Court, the United States Trustee, and creditors from verifying whether these flat rates reflect actual out-

of-pocket costs or if the estate is absorbing an unauthorized overhead markup.

24. Absent concrete vendor invoices and verifiable formula utilized, these lump-sum charges are facially unreasonable and prevent the Court from evaluating whether the costs were actual and necessary under 11 U.S.C. § 330.

25. Lastly, while the Application indicates that Counsel for the Debtor bills clients at 0.10 per page for photocopies, review of the invoice reveals a complete absence of an auditable formula. In other words, the invoice entries fail to disclose the fundamental multiplier required to verify the math—specifically, the number of pages contained within each mailed packet.

- 04/10/2026 Entry: The firm printed 123 copies. At $0.10 per page, the math yields exactly $12.30. However, the invoice lists a total of $98.40.
- 04/21/2026 Entry: The firm printed 144 copies. At $0.10 per page, a single-page document would cost $14.40. The invoice lists a total of $28.80.
- 05/26/2026 Entry: The firm printed 163 copies. At $0.10 per page, a single-page document would cost $16.30. The invoice lists a total of $293.40.
- 06/15/2026 Entry: The firm printed 164 copies. At $0.10 per page, a single-page document would cost $16.40. The invoice lists a total of $262.40.

(ECF No. 135 at 18).

WHEREFORE, Kevin M. Epstein, United States Trustee for Region 5, respectfully requests that this Court enter an Order: i) sustaining this Objection; ii) reducing the requested professional fee award by $1,082.50 for routine clerical and administrative tasks improperly billed at professional rates; iii) reducing the requested travel fee compensation by $340.00 for the March 24, 2026 entry to properly apply the mandatory 50% non-working travel rate cap required by Local Bankruptcy Rule 2016-1 and controlling Fifth Circuit precedent; iv) disallowing or staying the reimbursement of the generic mailing and service expenses until Counsel for the Debtor produces itemized third-party vendor receipts and/or discloses formula utilized; and v) granting such other,

further, and general equitable relief as this Court deems just, proper, and appropriate.

Kevin M. Epstein

United States Trustee
Region 5, Judicial Districts
of Louisiana and Mississippi

By: /s/ *Anna Haugen*
Anna Haugen

Anna Haugen, FL Bar No. 89555
Trial Attorney, Office of the U.S. Trustee
300 Fannin Street, Suite 3196
Shreveport, LA 71101
Anna.Haugen@usdoj.gov
Telephone No. (318) 676-3456
Direct Telephone No. (318) 676-3554

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

SWIFTSHIPS, LLC  
Debtor

CASE NO. 26-50237  
CHAPTER 11

**CERTIFICATE OF SERVICE**

I certify that a copy of the above and foregoing ORDER has been either mailed by first class mail, postage prepaid, or transmitted by CM/ECF to the following:

Swiftships, LLC  
1105 Levee Road  
Morgan City, LA 70380-1001

Ryan James Richmond  
Sternberg, Naccari & White, LLC  
450 Laurel Street,Suite 1450  
Baton Rouge, LA 70801

Emile Joseph, Jr.  
Allen & Gooch, A Law Corporation  
P.O. Box 81129  
Lafayette, Louisiana 70598

Benjamin W. Janke  
BAKER, DONELSON, BEARMAN,  
CALDWELL & BERKOWITZ, PC  
201 St. Charles Avenue, Suite 3600  
New Orleans, Louisiana 70170

Carli M. Worsham  
BAKER, DONELSON, BEARMAN,  
CALDWELL & BERKOWITZ, PC  
201 St. Charles Avenue, Suite 3600  
New Orleans, Louisiana 70170

Duris L. Holmes  
DEUTSCH KERRIGAN, L.L.P.  
755 Magazine Street  
New Orleans, Louisiana 70130

Ryan W. Lamb  
U.S. Department of Justice

P.O. Box 875-Ben Franklin Station
Washington, DC 20044

Joseph E. "Josh" Lee III (Bar #26968)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130

Claire A. Campbell (Bar #41181)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130

PATRICK K. RESO
HENRI S. THERIOT
CHEHARDY, SHERMAN, WILLIAMS,
RECILE & HAYES, L.L.P.
111 North Oak Street, Suite 200
Hammond, Louisiana 70401

Seth B. Shapiro
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC 20044-0875

Rick M. Shelby
KELLY HART PITRE
400 Poydras Street, Suite 1812
New Orleans, LA 70130

Amelia L. Hurt
KELLY HART PITRE
400 Poydras Street, Suite 1812
New Orleans, LA 70130

Louis M. Phillips
KELLY HART PITRE
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916

KREBS FARLEY, PLLC
Laura F. Ashley
400 Poydras Street, Suite 2500

New Orleans, LA 70130

KREBS FARLEY, PLLC
Elliot Scharfenberg
400 Poydras Street, Suite 2500
New Orleans, LA 70130

Charels M. Rush, APLC
202 Magnate Drive
Lafayette, LA 70508

Mark A. Mintz
Jones Walker LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100

Date: September 1, 2026

By: *___/s/ Jennifer J. Moore*
Jennifer J. Moore
Paralegal Specialist
Office of the United States Trustee
300 Fannin Street, Suite 3196
Shreveport, LA 71101
Telephone No. (318) 676-3456