IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: | Case No. 26-50237 |
| SWIFTSHIPS, LLC,[1] | Chapter 11 |
| *Debtor-in-Possession*. | |

**DEBTOR'S SECOND EXPEDITED MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING AND GRANTING RELATED RELIEF**

**NOW INTO COURT**, through undersigned counsel, comes Swiftships, LLC (the "Debtor"), who submits this second motion (this "Motion") seeking approval of post-petition debtor-in-possession financing. In support, the Debtor represents:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b). The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this Chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The grounds for the relief requested herein are sections 105, 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

[1] The last four digits of the Debtor's federal tax identification number are 8795. The Debtor's mailing address is 1105 Levee Road, Morgan City, LA 70380.

(the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the Western District of Louisiana (the "Local Rules").

## RELIEF REQUESTED

4. The Debtor seeks entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and a final order (the "Final Order" and, together with the Interim Order, the "DIP Orders")[2] granting the following relief:[3]

- ***Second DIP Facility***: Authorizing the Debtor to obtain up to $600,000 in additional post-petition unsecured financing (the "Second DIP Financing") from ICS Nett Inc. (the "DIP Lender"), an insider and affiliate of the Debtor, under a second debtor-in-possession credit facility (the "Second DIP Facility"), upon entry of the Interim Order. The $600,000 amount is a borrowing cap, not a required immediate advance. The Second DIP Facility bears interest at 2.91% per annum, does not provide for a stated maturity date, and will be repaid only in accordance with the subordination terms described below and the treatment ultimately provided under a confirmed plan.

- ***Subordinated Unsecured Claims; Conditional Waiver of First DIP Priority***: The DIP Lender seeks no lien, superpriority, or administrative expense priority on account of the Second DIP Facility. Subject to approval of the Second DIP Facility, the DIP Lender has expressly agreed to waive the administrative expense priority previously granted on an interim basis for the first $600,000 DIP financing facility (the "First DIP Facility"). Both facilities, including principal and all accrued interest, shall be treated as general unsecured claims contractually subordinated in payment and distribution to all allowed non-insider, non-affiliate general unsecured claims, in chapter 11 and in any subsequent chapter 7 case. The requested relief does not authorize a present debt-to-equity conversion; any such proposed treatment will be addressed, if agreed, through a subsequently proposed joint plan.

- ***Automatic Stay***: Modifying the automatic stay under section 362 of the Bankruptcy Code solely to the extent, if any, necessary to implement the relief expressly authorized by the DIP Orders; no foreclosure, collection, or other enforcement rights are requested.

[2] The Debtor will file the form of Final Order prior to the Final Hearing.

[3] The summaries contained in this motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this motion is inconsistent with such documents, the terms of the applicable documents shall control.

- ***Final Hearing***: Scheduling a hearing (the "Final Hearing") to consider final approval of this motion.

## BACKGROUND

5. On March 18, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since that time the Debtor has continued to operate and manage its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6. The Debtor is engaged in the business of shipbuilding and marine manufacturing. In the ordinary course of its business, the Debtor designs, constructs, repairs, and services both civilian and military vessels. Its operations involve long-term construction contracts, substantial vendor coordination, payroll obligations, materials procurement, and project-specific cash administration.

7. The Debtor's operations include four shipbuilding and maritime-related programs involving domestic defense, foreign military, and direct commercial vessel production efforts. Collectively, these programs generate contract-related receipts, vendor obligations, procurement costs, labor expenses, and performance-related disbursements that are administered through the Debtor's existing cash management system.

8. The Debtor seeks approval of the Second DIP Facility to provide a payroll backstop and working capital sufficient to support operations through anticipated confirmation of a chapter 11 plan. The Debtor's workforce is a critical operational asset, and any payroll interruption risks impairing contract performance and diminishing estate value. The Second DIP Facility provides a maximum of $600,000 of additional liquidity without granting liens or administrative priority, while the DIP Lender's agreement to subordinate both DIP facilities is expected to benefit non-insider, non-affiliate unsecured creditors. The Debtor is preparing an updated cash-flow projection

identifying the timing of its liquidity needs and anticipated application of the funds and will supplement the record with that projection before the requested interim hearing.

9. The DIP Lender previously agreed to provide up to $600,000 in unsecured postpetition financing under the First DIP Facility, for which it requested an administrative expense claim under section 503(b)(1) of the Bankruptcy Code subordinate to certain administrative claims. The Court approved the First DIP Facility on an interim basis, no final approval has been entered. The full $600,000 was advanced and has been exhausted. Interest under that facility continues to accrue at 2.91% per annum. Through this Motion, the Debtor seeks approval of the Second DIP Facility and modification of the treatment of the indebtedness arising under the First DIP Facility, rather than separate final approval of the administrative expense treatment originally requested for the First DIP Facility.

10. The Debtor requires access to the Second DIP Facility to maintain its operations through anticipated confirmation of a chapter 11 plan being negotiated with the Official Committee of Unsecured Creditors (the "Committee"). The DIP Lender's relinquishment of the administrative expense priority associated with the First DIP Facility is expressly conditioned upon entry of an order approving the Second DIP Facility. Upon entry of the Interim Order authorizing the Second DIP Facility, the DIP Lender's waiver shall become effective and binding upon the DIP Lender and its successors and assigns, including in any subsequent chapter 7 case.

11. The proposed financing and subordination are intended to benefit creditors: if the Second DIP Facility is fully drawn, approximately $1.2 million in aggregate DIP principal, plus accrued interest, would stand behind allowed non-insider, non-affiliate general unsecured claims rather than compete with those creditors for distributions. Counsel for the Debtor and the

Committee have discussed the proposed facility, but the Committee has not consented to the relief sought. Any potential conversion of either DIP facility into equity remains subject to negotiation.

## CONCISE STATEMENT OF SUMMARY PURSUANT TO BANKRUPTCY RULE 4001

12. The following chart summarizes the terms of the proposed Second DIP Facility and the related conditional modification of the First DIP Facility. The summary is subject to the financing documents and the DIP Orders, provided that the express subordination and waiver relief requested herein must be reflected consistently in those documents and orders:

| Provision | Summary of Material Terms |
|---|---|
| DIP Lender | ICS Nett Inc. |
| Borrower | Swiftships, LLC, the debtor |
| Collateral | None; unsecured. |
| Guarantors | None. |
| Purpose | To provide a payroll backstop and operational liquidity through anticipated plan confirmation, with draws limited to actual needs. |
| Amount | Up to $600,000 in additional borrowings (maximum commitment; not a required initial draw). |
| Interest Rate | 2.91% per annum on the Second DIP Facility; interest continues to accrue on the First DIP Facility. |
| Origination Fee | None |
| Processing Fee | None |
| Lien Position | None |
| Closing Costs | None |
| Administrative Priority | None for Second DIP Facility. First DIP Facility interim administrative priority conditionally waived upon entry of the Interim Order authorizing the Second DIP Facility, with survival following any denial of final approval to be addressed expressly in the DIP Orders. |
| Subordination | Contractual subordination under section 510(a) of all outstanding principal and accrued interest under both facilities to allowed non-insider, non-affiliate general unsecured claims; binding in chapter 11 and any subsequent chapter 7 case. |
| Maturity / Repayment | No stated maturity date. No payments or distributions on either DIP claim until the designated senior claims have been paid in full; later treatment pursuant to a confirmed plan or consistent court order. |
| Possible Equity Conversion | Reserved for negotiations and potential future joint plan; not sought in this Motion. |

## <u>GROUNDS FOR RELIEF</u>

**A. The Debtor should be authorized to obtain post-petition financing.**

13. The Debtor requests authority to incur the proposed unsecured financing under section 364 of the Bankruptcy Code and approval of the DIP Lender's voluntary, conditional waiver and contractual subordination of claims arising from both facilities. Although section 364(b) ordinarily addresses unsecured post-petition borrowing that receives administrative expense treatment, the DIP Lender affirmatively waives that treatment for the Second DIP Facility and, upon approval of the Second DIP Facility, agrees to relinquish the administrative expense priority awarded on an interim basis under the First DIP Facility. The requested order should expressly approve and implement those consensual terms without suggesting that section 364(b), by itself, automatically creates a subordinated general unsecured claim.

14. In determining whether the Debtor has exercised sound business judgment in deciding to enter into the Second DIP Facility, the Court may take into consideration non-economic benefits to the Debtor offered by a proposed post-petition facility. For example, in *In re ION Media Networks, Inc.*, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009), the Bankruptcy Court for the Southern District of New York explained that "noneconomic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization" may be properly considered by debtors when selecting post-petition financing, because the "business decision to obtain credit from a particular lender is almost never based purely on economic terms" due to the importance of those terms. *Id.*

15. The Second DIP Facility is a reasonable exercise of the Debtor's business judgment in the circumstances of this chapter 11 case. It would make up to $600,000 available at 2.91% per annum without liens, fees, or administrative expense priority, while securing a conditional waiver

of the priority of the previously advanced $600,000 First DIP Facility. No comparable financing on these terms has been identified. The Debtor accordingly seeks authorization of the financing and the related consensual claim treatment, subject to appropriate notice and entry of the DIP Orders.

16. Based on the facts and circumstances of this Chapter 11 case, the Second DIP Facility represents a proper exercise of the Debtor's business judgment. As noted above, bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including decisions about whether and how to borrow money. *See*, *e.g.*, *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity") (citation omitted); *In re Metaldyne Corp.*, 409 B.R. 661, 667–68 (Bankr. S.D.N.Y. 2009) (noting "decisions in [the Southern District of New York] emphasizing that [bankruptcy courts] should not substitute [their] business judgment for that of the Debtors'") (citations omitted), *aff'd* 421 B.R. 620 (S.D.N.Y. 2009); *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40 ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); *see also In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011) (noting that the business judgment standard in the context of section 363 of the Bankruptcy Code "is flexible and encourages discretion").

17. Specifically, when evaluating whether a debtor's decision to obtain post-petition financing was an exercise of sound business judgment, courts need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Dura Auto. Sys., Inc.*, 2007 WL 7728109, at *97 (Bankr. D. Del. Aug. 15, 2007) (quoting *In re*

*Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006)). When evaluating whether a debtor's decision to enter into post-petition financing was an exercise of sound business judgment, bankruptcy courts consider the terms of the financing in light of the debtor's circumstances and the market for financing more generally. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization).

18. Under the Second DIP Facility, the DIP Lender will hold only a general unsecured claim for advanced principal and accrued interest, expressly subordinated pursuant to section 510(a) of the Bankruptcy Code in right of payment and distribution to all allowed general unsecured claims held by creditors that are neither insiders nor affiliates of the Debtor. As a condition of approval of the Second DIP Facility, the DIP Lender also agrees to relinquish the administrative expense priority associated with the First DIP Facility and to subordinate all outstanding principal and accrued interest under the First DIP Facility on the same terms. The foregoing contractual subordination shall apply in this chapter 11 case, under any confirmed chapter 11 plan, and in any subsequent case under chapter 7 of the Bankruptcy Code, and shall be binding upon the DIP Lender and its successors and assigns. No payment on either DIP claim will be made before full payment of the senior claims described above, and the timing and manner of any eventual repayment will be governed by a confirmed plan or further order of the Court consistent with that subordination. Nothing herein authorizes conversion of DIP debt into equity.

19. The Debtor does not believe comparable third-party financing on the proposed terms is reasonably available given its existing capital structure and immediate liquidity needs.

The DIP Lender is an insider and affiliate; accordingly, the Debtor does not characterize the negotiations as negotiations with an independent, arm's-length third party. The Debtor submits that the economic terms and the DIP Lender's substantial subordination concessions nevertheless support the requested relief.

20. The Debtor has a fiduciary duty to protect and maximize its estate's assets. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004). The Debtor seeks access to the Second DIP Facility consistent with that duty. Without access to the Second DIP Facility, the Debtor would be unable to fund critical payments that are essential to the Debtor's operational and restructuring viability.

21. In considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. at 886; see also *In re Ellingsen MacLean Oil Co.*, 65 B.R. at 365. The appropriateness of a proposed financing facility should also be considered in light of current market conditions.

22. The terms of the Second DIP Facility have been discussed by the Debtor and the DIP Lender with the assistance of their advisors. Counsel for the Debtor and counsel for the Committee have discussed the financing, but the Committee has not approved or consented to it. Importantly, the DIP Lender proposes to relinquish the administrative expense priority authorized on an interim basis for the First DIP Facility. Without that concession, the first facility would remain subject to its interim priority treatment unless and until otherwise ordered, potentially reducing the funds available for general unsecured creditors. If fully drawn, the Second DIP Facility would result in approximately $1.2 million in aggregate DIP principal, together with accrued interest, being contractually subordinated to allowed non-insider, non-affiliate general

unsecured claims, potentially improving those creditors' recoveries. The Second DIP Facility is intended to support operations through confirmation while the Debtor and Committee negotiate a joint plan; it is not part of a prepackaged restructuring.

**B. The DIP Lender should be deemed a good faith lender under section 364(e).**

23. Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right to any lien securing those loans, even if the authority of the debtor to obtain such loans or to grant such liens is later reversed or modified on appeal. Section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

24. The DIP Lender has agreed to advance funds on the disclosed terms, notwithstanding its insider and affiliate relationship with the Debtor. That relationship has been disclosed, the Second DIP Facility provides no lien or administrative priority, and the DIP Lender proposes a substantial conditional waiver and contractual subordination of both facilities. To the extent section 364(e) applies to the financing authorized under the DIP Orders, the Debtor requests a finding of good faith based on the evidentiary record.

**C. Failure to obtain immediate interim access to the Second DIP Facility would cause immediate and irreparable harm.**

25. Bankruptcy Rule 4001(c) governs the request for authorization to obtain credit and permits an expedited preliminary hearing for interim borrowing relief necessary to avoid immediate and irreparable harm pending final consideration after the applicable notice period. The Debtor requests interim authority to borrow only the amounts reasonably required to avert that

harm. The Debtor will supplement the record with an updated cash-flow projection showing its immediate liquidity needs and proposed use of the additional financing.

26. Absent timely interim access to additional financing, the Debtor faces interruption of payroll and operations, risking loss of skilled workers, interference with vessel construction and contract performance, and consequent diminution of estate value. The Debtor will offer management testimony and updated cash-flow information to substantiate the amount of interim borrowing necessary to avoid immediate and irreparable harm.

27. The Second DIP Facility is designed to bridge the Debtor's operating and working-capital needs through anticipated confirmation of a joint chapter 11 plan being negotiated with the Committee. The requested aggregate borrowing authority is capped at $600,000; the Debtor does not seek authority to draw funds beyond demonstrated operating needs.

28. Accordingly, pursuant to section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtor requests that the Court conduct an expedited interim hearing on November 10, 2026, subject to the Court's calendar, and authorize borrowing under the Second DIP Facility only in the amount shown to be necessary to avoid immediate and irreparable harm pending a final hearing. The Debtor will supplement the record with updated cash-flow projections identifying its near-term liquidity needs and proposed application of financing proceeds and will present management testimony concerning the necessity and reasonableness of the requested interim borrowing. After appropriate notice and a final hearing, the Debtor requests authorization to borrow up to the full $600,000 commitment, subject to the terms of the DIP Orders.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

29. The Debtor requests that the Court determine that the notice provided is sufficient for the requested interim relief and, to the extent Bankruptcy Rule 6004(h) applies, waive any

applicable stay to permit prompt access to financing needed to preserve operations. Any waiver should be limited to relief actually granted by the Court.

**WHEREFORE**, the Debtor requests entry of an Interim Order and, after appropriate notice and hearing, a Final Order: (a) authorizing interim borrowing under the Second DIP Facility in an amount necessary to prevent immediate and irreparable harm, as established by the record; (b) authorizing borrowing up to the $600,000 maximum commitment upon final approval, at 2.91% per annum without liens or administrative expense priority; (c) approving, upon entry of the Interim Order authorizing the Second DIP Facility, the DIP Lender's conditional relinquishment of administrative expense priority associated with the First DIP Facility, subject to terms expressly stated in the DIP Orders concerning the effect of any denial of final approval; (d) approving the contractual subordination of all principal and accrued interest under both facilities to allowed non-insider, non-affiliate general unsecured claims in chapter 11 and any subsequent chapter 7 case; (e) confirming that any future debt-to-equity conversion must be addressed through a subsequently proposed plan and is not authorized by the DIP Orders; (f) scheduling a final hearing to consider the remaining relief; and (g) granting such other relief as is appropriate.

Dated: October 26, 2026

Respectfully Submitted:

**/s/ Ryan J. Richmond**
**STERNBERG, NACCARI & WHITE, LLC**
Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Telephone: (225) 412-3667
Facsimile: (225) 286-3046
Email: ryan@snw.law

*Attorneys for Swiftships, LLC*